[Sac. No. 327. Department Two.—May 20, 1898.]

## BERNARD RUHL, Respondent, v. GEORGE M. MOTT, Appellant.

VENDOR AND PURCHASER—RESCISSION OF CONTRACT OF SALE—WAIVER—AFFIRMANCE.—The right of the purchaser of land to rescind the contract of sale and purchase, for alleged fraud of the vendor, is waived, where it appears that the purchaser went into possession of the land, and one year after making the deed, and after discovery that he had been imposed upon, conveyed city property to the vendor in part payment of the purchase money, and one year later, after default in the payment of interest, executed a new note and mortgage, which included the unpaid interest, whereupon the earlier note and mortgage were canceled. No fraud nor imposition having been practiced by the vendor to secure these new arrangements, they were distinct acts of affirmance of the contract by the purchaser after knowledge by him of the fraud, and precluded his right to rescind the contract.

ID.—FALSE REPRESENTATIONS—MEANS OF KNOWLEDGE—DISCOVERY—DUTY TO INVESTIGATE.—Where a person is justified in relying and does in fact rely upon false representations, his right of action is not destroyed because means of knowledge are open to him, and no duty is devolved upon him in such case to employ such means of knowledge; but when, thereafter, he discovers that he has been deceived and defrauded as to one material matter, he has notice that he may have been otherwise defrauded, and is bound to make full investigation.

ID.—ELECTION TO RESCIND OR AFFIRM.—A defrauded party has but one election to rescind, and he must exercise that election with reasonable promptness after discovering the fraud; and delay in rescission is evidence of a waiver of the fraud, and of an election to treat the contract as valid, and any acts evincive of an intent to abide by the contract are evidence of an affirmance of the contract, and of a waiver of the right of rescission.

ID.—FINDINGS—OFFER TO RESCIND—ACTS OF AFFIRMANCE—IGNORANCE OF LAW.—Where the plaintiff had knowledge of facts and of law sufficient to perform the legal duty of offering to rescind, which the court finds that he did, a finding that he did not know his rights in the premises when subsequently entering into the new arrangements with the vendor is to be construed as a mere declaration of his partial ignorance of the law in relation to his acts of affirmance, which could not excuse those acts, or prevent them from binding him.

ID.—IGNORANCE NOT PALLIATED—WEAKNESS OF MIND AND CONFIDENTIAL RELATIONS DISPROVED.—The ignorance of the legal rights of the plaintiff is not palliated nor excused by alleged weakness of mind and confidential relations, where the court does not find that the plaintiff was of weak mind, and his own evidence proved the contrary, and where the business relations between the parties were not in fact such as to constitute the defendant a trustee of the plaintiff,

nor to establish the confidential relationship defined in section 2219 of the Civil Code; and the fact that plaintiff reposed confidence in the defendant did not cast any duty upon the defendant, where it does not appear that defendant voluntarily assumed a relation of personal confidence with the plaintiff, and it appears that no such relationship was imposed by operation of law.

ID.—DISCOVERY OF FRAUD AND HOSTILITY—DUTY AS TO LEGAL ADVICE.— Where it appears from plaintiff's testimony that plaintiff early discovered that defendant had made false representations as to the character of the land and the income derived from it, and that defendant was not his friend, but was hostile and false to him, from that time he was not justified nor excused in taking upon faith any declarations made to him by the defendant, and it was his duty to have obtained legal advice, if he purposed to prosecute his right of rescission.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Matt. F. Johnson, Judge.

The facts are stated in the opinion of the court.

Albert M. Johnson, for Appellant.

Plaintiff's right to rescind was defeated by laches and affirmance of the contract. (Civ. Code, secs. 1689, 1691; *Bailey v. Fox,* 78 Cal. 389; *Delano v. Jacoby,* 96 Cal. 275; 31 Am. St. Rep. 201; *Gamble v. Tripp,* 99 Cal. 223; *Marten v. Burns Wine Co.,* 99 Cal. 355; *Atwood v. Small,* 6 Clark & F. 232–356; *McCulloch v. Scott,* 13 B. Mon. 172; 56 Am. Dec. 561; *Clements v. Smith,* 9 Gill, 156; *Max Meadows etc. Co. v. Brady,* 92 Va. 71; *Grymes v. Sanders,* 93 U. S. 55; *Schiffer v. Dietz,* 83 N. Y. 300–08; *Vigers v. Pike,* 8 Clark & F. 562, 650; *Foley v. Crow,* 37 Md. 51; *Arnold v. Hagerman,* 45 N. J. Eq. 186, 196; 14 Am. St. Rep. 712; *Bach v. Tuch,* 126 N. Y. 53; *Kraus v. Thompson,* 30 Minn. 64; 44 Am. Rep. 182; *McLean v. Clapp,* 141 U. S. 429; *Evans v. Montgomery,* 50 Iowa, 325; *Gale Sulky Harrow Mfg. Co. v. Moore,* 46 Kan. 324; *Bell v. Keepers,* 39 Kan. 105; *Crook v. Nippolt,* 44 Minn. 239; *Estes v. Reynolds,* 75 Mo. 565; *Pearsoll v. Chapin,* 44 Pa. St. 9; *Rugan v. Sabin,* 53 Fed. Rep. 415.)

Robert T. & William H. Devlin, for Respondent.

Plaintiff had a right to rely upon the truthfulness of defendant's statements, notwithstanding the means of ascertaining

their falsity were open to him. (*Dobinson v. McDonald*, 92 Cal. 33; *Gammill v. Johnson*, 47 Ark. 335; *Mead v. Bunn*, 32 N. Y. 275; *David v. Park*, 103 Mass. 501; *Kiefer v. Rogers*, 19 Minn. 32; *Matlock v. Todd*, 19 Ind. 130; *Keller v. Equitable etc. Ins. Co.*, 28 Ind. 170; *Venzuela Ry. Co. v. Kisch*, L. R. 2 H. L, Cas. 99; *Rodgrave v. Heard*, L. R. 20 Ch. Div. 1.) Ratification or affirmance is not effective when there is an imperfect knowledge of material facts. (Civ. Code, sec. 2314; *Pratt v. Philbrook*, 41 Me. 132; *Moxon v. Payne*, 43 L. J. Ch. 240; *Tarkington v. Purvis*, 128 Ind. 182.) A waiver is. the intentional relinquishment of a known right. (*Hoxie v. Home Ins. Co.*, 32 Conn. 40; 85 Am. Dec. 240; *Lewis v. Phœnix etc. Ins. Co.*, 44 Conn. 91; *Kent v. Warner*, 12 Allen, 563; *Shaw v. Spencer*, 100 Mass. 395; *West v. Platt*, 127 Mass. 372; *Holdsworth v. Tucker*, 143 Mass. 374.) No man can be bound by a waiver of his rights, unless it is made distinctly and with full knowledge of the rights which he intends to waive. (*Montague v. Massey*, 76 Va. 314; *Darnley v. London etc. Ry. Co.*, L. R. 2 H. L. Cas. 57; *Traynor v. Johnson*, 1 Head, 51; *Bennecke v. Connecticut etc. Ins. Co.*, 105 U. S. 359.) To make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal, and decisive act amounting to an estoppel. (*Ross v. Swan*, 7 Lea, 467; *Belknap v. Bender*, 75 N. Y. 453; 31 Am. Rep. 476.)

HENSHAW, J.—These appeals are by defendant from the judgment and from the order denying his motion for a new trial.

1. The plaintiff by his action sought to enforce a rescission of an executed contract for the purchase and sale of agricultural lands in which he was the vendee. His right to relief is based upon: 1. Alleged false representations as to character and quality of the land, the depth of soil and the income derived from it; 2. A breach and abuse of confidential relations existing between the parties; 3. Promises made by defendant to plaintiff for the purpose of inducing him to enter into the contract, which promises at the time when they were made were not intended by defendant to be performed; 4. Weakness of mind of plaintiff, induced by sickness and intoxication, of which defendant took advantage; 5. Artifice and deceit by which defendant prevented plaintiff from making an independent examination of the property.

Defendant demurred to the sufficiency of the complaint, which demurrer was overruled. He then pleaded in answer, denying all the allegations of fraud, denying the confidential relations and the breach thereof, and pleading affirmatively that after knowledge upon the part of plaintiff of the condition, kind, and character of the land, plaintiff voluntarily affirmed the contract, and thereby waived any right which he might have had to rescind it.

Upon the trial, an advisory jury was impaneled by the court, and to it certain special issues were submitted for determination. These issues related to the alleged fraudulent misrepresentations, artifices, and devices practiced by defendant. The verdicts of the jury upon all of these issues were for plaintiff. The judge, with great reluctance, stating that he had himself reached an opposite conclusion from the evidence, adopted these verdicts, and added to them other findings adverse to defendant's contentions, all of which findings are here assailed, and so rendered judgment for plaintiff.

The charges in the complaint are substantially the following: Plaintiff was a bookbinder by occupation. A considerable portion of his business he obtained by contract from the printing and stationery house of H. S. Crocker & Co. Defendant was a member of this company, and its business manager in Sacramento. Plaintiff went to defendant, expressing his desire to purchase a piece of land suitable for horticultural purposes. Defendant told him that he had a ranch which was better and cheaper than the land which plaintiff told defendant he contemplated purchasing. Defendant took plaintiff to visit his land, which was situated about twelve miles from Sacramento, showed him a portion of it, consisting of about fifty-two acres of rich bottom land, two and a half acres of which were planted in vines. The farm contained two hundred and sixty-four acres, and defendant represented to plaintiff that the land was all of the same quality throughout; that the soil was from fifteen to twenty feet deep; that defendant farmed the land through a tenant, and received seven hundred and fifty dollars a year for his share, while at the same time the tenant, who was not a good farmer, netted about one thousand dollars a year additional. Defendant also told plaintiff that the land had cost him fifty dollars an acre, and further stated that if the plaintiff would buy the land from him

he would give him all the work of H. S. Crocker & Co. as he had done in the past. He also prevented plaintiff, by artifice and deceit, from talking to anybody, or consulting with or inquiring of the neighbors, hurrying him out to the land and away from it, and finally prevailed upon him to make a small payment of five hundred dollars upon account of the purchase price.

Such are the charges of the complaint, which by the findings are declared proven. These findings, as has been intimated, are bitterly assailed by appellant. Under the views hereafter to be expressed it is unnecessary to enter into a consideration of the sufficiency or insufficiency of the evidence to support them.

The purchase price of the land was twelve thousand five hundred dollars. The alleged falsity of the declarations consisted in this—that the remaining portion of the two hundred and sixty-four acres was not at all of the character of the fifty-two acres of rich bottom land exhibited to plaintiff. On the contrary it was "hard-pan land"—land with sterile soil of but from six to eighteen inches in depth entirely unsuited for horticultural purposes and very poorly adapted to any purposes of agriculture. Throughout this land the bedrock was visible in many places and the plow struck it constantly. Defendant had not received seven hundred and fifty dollars income from the place in preceding years but received one hundred and seventy-eight dollars in one year and two hundred and twenty dollars in another year. The fifty-two acres of bottom land is found to have been worth twenty-five dollars an acre and the rest of the land ten dollars an acre.

Findings 15 and 16 of the court are as follows:

"15. That plaintiff did not discover immediately after the execution of the conveyance of the land to him, or immediately upon his entry into possession of said land, any discrepancy between the true character of the land and the representations respecting the same made by defendant, and that plaintiff did not discover said discrepancy fully until the month of June, 1894, but, as soon as he had the first intimation that any of said representations were untrue rescinded the transaction and offered to restore to defendant everything he had received, but defendant at all times positively refused to accept said offer or to rescind.

"16. That at the time that the plaintiff conveyed to the de-

fendant his Sacramento city property, and executed a note and mortgage therefor, and at the time he executed the mortgage now subsisting upon said premises, he did not know of his rights in the premises; and that he did not acquiesce in the original transaction of 1891, and did not ratify or approve the same, or any part thereof, and he at no time ratified the transaction complained of. Said transactions were but continuations of the original transaction, and were not intended or understood by either party to be and were not ratifications."

Finding 13 contains like declarations.

Accepting as true for the purposes of this consideration all the findings of the court relative to the fraud, misrepresentations, artifice, and deceit by which the plaintiff was induced to purchase, and by which he was prevented from making his own independent examination of the land before purchase, there remains for consideration the important question covered by the findings above quoted, the question whether plaintiff, by his conduct after discovery, waived or lost his right to rescind. Plaintiff went into possession of the land on the twenty-eighth day of October, 1891, when the deed of conveyance was made. The purchase price, twelve thousand five hundred dollars, was paid by plaintiff in the following manner: Fifteen hundred dollars cash, his unsecured note for five thousand dollars, and his note secured by mortgage upon the property itself for six thousand dollars. Plaintiff began to farm the land through an agent, and subsequently moved to the ranch with his family. One year after the making of the deed the situation of the parties to the contract changed in the following manner: Plaintiff conveyed to defendant city property for nine thousand five hundred dollars. Upon this property there was at the time a mortgage amounting to three thousand five hundred dollars. Defendant accepted the property at the price agreed upon, nine thousand five hundred dollars, paid off at plaintiff's request his note at the California State Bank for two thousand dollars, credited three thousand dollars upon the purchase price of the farm, thus leaving eight thousand dollars due thereon for which a new note and mortgage were given, and paid the small remainder of the purchase price to plaintiff in money. Concerning this transaction there is no pretense that it was fraudulent in the sense that any undue ad-

vantage in values was taken by defendant, or that defendant did not fully and faithfully perform his part of the contract as it was agreed upon between the parties. The averment of the complaint is merely that plaintiff was sick and unable to resist defendant's importunities. The finding of the court is, that the plaintiff, though physically sick, continued to transact business.

Matters thus remained for another year, when plaintiff, who had defaulted in his interest, gave defendant a new note and mortgage for eight thousand six hundred dollars, which amount included the unpaid interest, and the earlier note and mortgage were surrendered and canceled. The only averment in the complaint touching this transaction is that "on November 1, 1893, the defendant induced the plaintiff to execute to him a new note in the sum of eight thousand six hundred dollars, bearing interest at eight and a half per cent per annum, secured by mortgage." There is no allegation in the bill, nor anything in the proof, to show that any deceit or artifice was employed by defendant in this transaction, any more than in the transaction by which the city property was sold. There is no evidence establishing such deceit, nor is there any finding upon the question.

It must result, then, that the transaction of 1892, whereby the city property was purchased by defendant, and a radical change made in the terms and conditions of the original contract of sale of the agricultural land, and the later transaction of 1893 whereby the plaintiff gave a new note and mortgage upon account of his purchase of defendant's ranch, being untainted by fraud, were distinct acts of affirmance by plaintiff of the original contract, if at the time when he entered into them he was aware of the original fraud of which he was the victim in the purchase of the ranch.

It has been said that in this discussion the findings of the court upon these frauds will be accepted as true. The only misrepresentations of which plaintiff can complain, as having induced him to his injury to purchase the property for a sum greater than its value, were: 1. That the soil was all of the character of the fifty-two acres exhibited to him, that is to say, deep, rich, bottom land, when in fact all of the rest of the ranch was of shallow, hard-pan soil of almost worthless character; and 2. That defendant represented that he was in receipt of an income of seven hun-

dred and fifty dollars a year as his share of the crops and profits of the ranch. Whether the defendant did or did not represent the land as good for apple trees, or good for grapes, or good for peach trees, is entirely immaterial: (a) Because the representations would be upon matters of opinion, and defendant was not a farmer, which fact was known to plaintiff; and (b) Because when plaintiff discovered the true character of the land he was as fit to judge of its capabilities, or to employ those who were, as was the defendant himself.

Nor can it be said that the alleged promise to give plaintiff all the binding business of H. S. Crocker & Co. was made without intention to perform; for it is shown that for some time after the sale the business of Crocker & Co. was in fact given to defendant precisely as it previously had been, and no finding of the court declares that the promise was unperformed or made without intent to perform.

Plaintiff, it is to be remembered, had been in the possession of the property since the twenty-eighth day of October, 1891. Defendant's powers for artifice and deceit as to the character of the land and its depth of soil were at an end. By his own testimony plaintiff appears to have made an early discovery of that character. He says: "It was in March, 1893, that I went down and saw Mott and had a long talk with him about the hard-pan that I had found on this place. That was one occasion; but I had also talked with him about the hard-pan and the bedrock in January, 1892, less than three months after I bought the property: yes, in January, 1892, we spoke about some of it, and I spoke to him and told him that I had found bedrock on the land, and mentioned other things to him, but I do not remember exactly what was said." Again, he is asked if he found fault with anything connected with the trade or with the land between January, 1892, when he complained of its character, and March, 1893, when he had testified that he again spoke about the hard-pan, and he answered: "In the summer of 1892 I did find fault about the crops, and about the income, and about what the place would produce, and what it was good for." Further, he says: "It was during the early part of that year (1892), and I had come to the conclusion that I had not been treated rightly, and I thought there was something very wrong about it, as I knew that he had mis-

represented things to me, because he had told me of certain things that I then found out were not true. I knew that he had told me things that were not true, because I had found out, being on the place, that misrepresentations had been used by him. I saw that the harvest was not going to be anything like what he told me the income used to be from the place. I had found out that the place would not raise so much as he said it would, and I told him long before I went to Goethe that he had misrepresented things to me, and that I was dissatisfied." All this was before the situation of the parties was changed, and the new contract entered into through the sale of the plaintiff's city land, its purchase by Mott, and the application of the proceeds of purchase as above set forth.

Again, he testifies that in March, 1893, he found out that the land was hard-pan. "Then I went to Mr. Mott and told him I had found out that the land was bedrock that struck the plow everywhere, and I believed it was a terrible thing to take me in in that way, and I offered to give him back the farm and he refused to do it."

Notwithstanding this knowledge, in November of the same year he affirmed the contract by including the unpaid interest in a new note, and giving to defendant a new mortgage upon the land for the whole amount thereof.

There can be no doubt but that these acts of plaintiff amounted to an affirmance of the original contract after knowledge by him of the fraud. The foregoing quotations from plaintiff's testimony are sufficient to show the unsoundness of finding 15 made by the court. It matters not that plaintiff "did not discover said discrepancy fully until the month of June, 1894." His own testimony shows that long before that time he had discovered that he had been defrauded as to the character of the land, and had become satisfied that defendant had deceived him in his statement of the amount of income he had derived from it. These representations, it is always to be remembered, are the only ones which injuriously affected plaintiff in the matter of the purchase.

It is true that where one is justified in relying, and in fact does rely, upon false representations, his right of action is not destroyed because means of knowledge were open to him. In such a case, no duty in law is devolved upon him to employ such means

of knowledge. But when thereafter he discovers that he has been put upon and defrauded as to one material matter, notice is at once brought home to him that the man who has been false in one thing may have been false to him in all, and it becomes incumbent upon him to make full investigation. A defrauded party has but one election to rescind, and he must exercise that election with reasonable promptness after discovering the fraud. (*Dennis v. Jones*, 44 N. J. Eq. 513; 6 Am. St. Rep. 899.) Delay in rescission is evidence of a waiver of the fraud, and of an election to treat the contract as valid. Any acts evincive of an intent to abide by the contract are evidence of an affirmance of the contract, and of a waiver of the right of rescission. (*Delano v. Jacoby*, 96 Cal. 275; 31 Am. St. Rep. 201; *Marten v. Burns Wine Co.*, 99 Cal. 355; *Bailey v. Fox*, 78 Cal. 389; *Bach v. Tuch*, 126 N. Y. 53; *Crooks v. Nippolt*, 44 Minn. 239; *Pearsoll v. Chapin*, 44 Pa. St. 9.)

Finding 15 is that as soon as plaintiff had the first intimation that any of said representations were untrue he rescinded the transaction. It has been shown by plaintiff's own evidence that he received these intimations but a few months after he entered into possession of the land, and indeed it was most natural that he should, considering the character of the false representations alleged to have been made. The court finds that he then promptly offered to rescind, and that defendant refused to accept the offer. Upon this, plaintiff's cause of action to enforce a rescission became complete, and that cause of action would not be barred by the statute of limitations for three years. But, if he desired and designed to preserve his cause of action, then, as has been said, he must do nothing thereafter amounting to a waiver of his right to rescind, or equivalent to an affirmance of the contract. Both these things this plaintiff repeatedly did. By findings 13 and 16 it is declared that his subsequent acts were but continuations of the original transaction, and were not intended or understood by either party to be and were not ratifications. The word "ratification" is here somewhat loosely employed. The finding that the later transactions were but continuations of the original transaction cannot, under the evidence, be upheld. They were manifestly no part of the original contract. Neither of them was in contemplation when the original

contract was entered into. They were independent agreements substituted for the original, and changing the status of the parties. They were entered into by the plaintiff after knowledge and notice of the fraud which had been put upon him. His conduct in this regard amounted to a distinct and unequivocal affirmance of the original contract and a waiver of all right of rescission.

The legal and necessary effect of plaintiff's acts in the premises is sought to be overcome by a finding that "he did not know his rights in the premises." If this language is to be given any meaning, it is a declaration that plaintiff was ignorant of the law, but such ignorance cannot excuse. There may be extreme cases permitting such a plea, but none have been cited, and we need not be at pains to look for them. This, in any event, could not be one of them, for it appears that plaintiff's ignorance of the law was at the worst only partial. He seemingly knew enough of the law to perform the legal duty of offering promptly to rescind. This the court finds he did. But it is said that he did not know enough of law to justify a court in holding that his unequivocal later acts of affirmance should bind him. Plaintiff obtained title to this property in 1891. It was only in 1894 that he commenced this action. During that time he was at liberty to obtain legal advice if he had desired so to do.

Nor can his ignorance be palliated or excused because of the alleged confidential relations which existed between plaintiff and defendant, or because of plaintiff's alleged weakness of mind.

The court does not find that he was of weak mind, and plaintiff's own testimony as to other land transactions, and the uniform financial success with which he met in his speculations, negatives the idea that he was of feeble intellect. The confidential relationship is found by the court in the following language: "One-half or more of all the business done by plaintiff came from the defendant, as manager of the firm of H. S. Crocker & Co., and, as a result of the relation between them, plaintiff reposed great confidence in defendant, trusted him, and relied upon him for advice." But this finding is not sufficient to establish the confidential relationship defined in section 2219 of the Civil Code, so as to charge the defendant with the high duties pertaining to a trustee, and to shift the burden of proof to show the unfairness

of the transaction from the plaintiff, where it naturally rests, to the shoulders of the defendant, and compel the latter to establish the fairness of the sale. It is to be remembered that plaintiff was himself a business man, had bought and sold real estate, and was contracting with the Crocker Company, of which defendant was a manager. The fact that he reposed confidence in the defendant did not cast any duty upon the latter, unless he "voluntarily assumed a relation of personal confidence" with plaintiff, and this is not found. Equity always views with strictness the business dealings of a man with one who stands in a position of dependence or confidence to him, when that relationship is either voluntarily assumed or is imposed by operation of law. But it would indeed be an anomaly if one dealing with a vendor of land should be allowed to shut his eyes and ears and making no use of his faculties in determining the value of the property he purchased, thereafter excuse himself by saying that he reposed confidence in the vendor. He may in fact have done so, but the fact does not establish a confidential relation as known to law, and for his trusting folly neither law nor equity can afford him redress. Finally, it may be added in this connection that it appears from plaintiff's own testimony that he early became convinced, not alone that defendant had misrepresented to him the character of the land and the income derived from it, but equally that defendant was not in fact his friend, but was hostile and false to him. From that time, certainly, he was neither justified nor excused in taking upon faith any of defendant's declarations, and it was his manifest duty to have obtained legal advice if he purposed prosecuting his right of rescission.

It is apparent, therefore, assuming the truth and sufficiency of all other matters found, that plaintiff lost his right to rescind the contract by his later acts in affirmance thereof.

Wherefore, the judgment and order are reversed and the cause remanded.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.