[S. F. No. 1144. Department Two.—September 6, 1899.]

BURRITT N. DOW et al., Appellants, v. REVILLA A. SWAIN et al., Respondents.

EXCHANGE OF LAND FOR FOUNDRY STOCK — FRAUD — RESCISSION— FINDINGS—RELIANCE UPON FALSE REPRESENTATIONS.—In an action to rescind an exchange of land for foundry stock, fraud justifying the rescission is established by findings that plaintiffs were induced to make the exchange solely by reliance upon materially false and fraudulent representations of fact by the defendants as to the solvency, profits, and assets of the corporation owning the foundry, and that the value of the stock could have been approximately ascertained only by a thorough

investigation by experts of the value of the assets, property, books, and business of the corporation, and that plaintiffs were ignorant of the falsity of the representations, and acted upon them as true.

ID.—ABSENCE OF CONFIDENTIAL RELATIONS—POSSIBILITY OF INVESTI-GATION—JUDGMENT NOT SUPPORTED—REVERSAL UPON APPEAL.— Further findings that there was no relation of trust or confidence between the parties, that plaintiffs were not fraudulently induced to forbear inquiry into the truth of the representations, and that "they might have ascertained their falsity by making the necessary investigations and employing the proper means to that end," cannot overcome the effect of the other findings, or sustain a judgment for the defendants upon the entire findings; and judgment for the plaintiffs upon the findings will be ordered upon appeal.

ID.—NEGLECT OF EXAMINATION—CONCLUSION OF LAW—REASON FOR DECISION.—A finding placed in the conclusions of law "that by reason of their neglect and failure to properly examine the property which they took in exchange for their property, and to investigate and ascertain its value, equity will not grant relief to the plaintiffs," is not a misplaced finding of fact, nor properly a conclusion of law, but is in its nature the statement of a reason for decision.

ID. — RIGHT TO RELY UPON REPRESENTATIONS — INEQUALITY OF KNOWLEDGE—PRESUMPTION.—When a representation is made concerning facts of which the party making it has or is supposed to have knowledge, and the other party has no such advantage, and has not investigated for himself or been afforded the means of investigation, and begun to make inquiries, and the representation is not as to generalities, the knowledge of which is equally within the reach of both parties, it will be presumed that the party to whom the representations were made relied upon them, and he is justified in doing so.

ID.—IMPERFECT EXAMINATION BY BUYER—FAULT OF SELLER.—When the seller knows the facts and the buyer is ignorant, and to the knowledge of the seller the buyer relies upon the false representations, equity will not refuse relief because an imperfect examination was made by the buyer because of the false representations, and especially if means were used by the seller to prevent a perfect examination by the buyer.

ID.—POSITIVE ASSERTIONS WITHOUT WARRANT.—One who makes positive assertions without warrant cannot excuse himself by saying that the other party need not have relied upon them; but he must show that his representations were not in fact relied upon.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a motion to vacate the judgment and to render judgment for the plaintiffs.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Boyd & Fifield, for Appellants.

The facts found do not sustain the conclusions of law, or support the judgment.  A vendor who has by fraud circumvented his vendee by misrepresentation as to facts within his knowledge, the falsity of which is not known to the vendee, cannot say to his victim, "You are to blame for trusting to my statements, for you should have investigated for yourself." (*Bank of Woodland v. Hiatt*, 58 Cal. 234; *Marston v. Simpson*, 54 Cal. 189; *Senter v. Senter*, 70 Cal. 619; *Loaiza v. Superior Court*, 85 Cal. 30; *Groppengiesser v. Lake*, 103 Cal. 37; *Yeomans v. Bell*, 79 Hun, 215; *Sutton v. Morgan*, 158 Pa. St. 204; 38 Am. St. Rep. 842; *Fargo Gas etc. Co. v. Fargo Gas etc. Co.*, 4 N. Dak. 219; *Foley v. Holtry*, 43 Neb. 133; *Hoock v. Bowman*, 42 Neb. 80; 47 Am. St. Rep. 691; *Turner v. Houpt*, 53 N. J. Eq. 526; *Nelson v. Carlson*, 54 Minn. 90; *Handy v. Waldron*, 19 R. I. 618; *Olcott v. Bolton*, 50 Neb. 779; *Redgrave v. Hurd*, L. R. 20 Ch. Div. 1, 12-25; *Battelle v. Cushing*, 21 D. C. 59, 72; *Cornell v. Crane*, 113 Mich. 460; 1 Bigelow on Fraud, 523-28.)

A. E. Bolton, and Louis H. Sharp, for Respondents.

The findings that there was no investigation or use of proper means to that end, and that there was no relation of trust and confidence between the parties, and that the defendants did fraudulently induce plaintiff to forbear inquiry, sustain the judgment for defendants. (*Slaughter v. Gerson*, 13 Wall. 383; *Peabody v. Phelps*, 9 Cal. 222; *Commissioners v. Younger*, 29 Cal. 176; *Byrne v. Jansen*, 50 Cal. 627; *Alden v. Pryal*, 60 Cal. 215; *Champion v. Woods*, 79 Cal. 20; 12 Am. St. Rep. 126; *Hanscom v. Drullard*, 79 Cal. 237; *Harvey v. Dale*, 96 Cal. 161; *Wainscott v. Occidental etc. Assn.*, 98 Cal. 257; *Daley v. Quick*, 99 Cal. 183; *Lion v. McClory*, 106 Cal. 623; *Montgomery v. Keppel*, 75 Cal. 130, 7 Am. St. Rep. 125; *Southern Development Co. v. Silva*, 125 U. S. 247; *Farrar v. Churchill*, 135 U. S. 609; *Andrus v. St Louis etc. Ry. Co.*, 130 U. S. 643; *Farnsworth v. Duffner*, 142 U. S. 43; *Brown v. Leach*, 107 Mass. 368; *Parker v. Moulton*, 114 Mass. 99; 19 Am. Rep. 315; *Poland v. Brownell*, 131 Mass. 141; 41 Am. Rep. 215; *Deming v. Darling*, 148 Mass. 506; *Long v.*

*Warren,* 68 N. Y. 426; *Schumaker v. Mather,* 133 N. Y. 596; *Mosher v. Post,* 89 Wis. 602; *Farr v. Peterson,* 91 Wis. 182; *Lewis v. Brookdale Land Co.,* 124 Mo. 672.) It is only where the subject of the sale is not at hand that the buyer can rely upon the representations of the seller without investigation. It is otherwise when the property sold is at hand, and can be investigated. (*Chrysler v. Canaday,* 90 N. Y. 272; 43 Am. Rep. 166.) The finding placed in the conclusions of law that, "by reason of their neglect and failure to properly examine the property which they took in exchange for their property, and to investigate its value, equity will not grant relief to the plaintiffs," is a finding of fact which sustains the judgment, notwithstanding its position. (*Bath v. Valdez,* 70 Cal. 355; *Spargur v. Heard,* 90 Cal. 228; *Burton v. Burton,* 79 Cal. 490; *Foot v. Murphy,* 72 Cal. 105; *Millard v. Legion of Honor,* 81 Cal. 347.)

TEMPLE, J.—This action was brought to enforce a rescission of a contract for fraud. It is averred that Carrie C. Dow, wife of the other plaintiff, until August 1, 1895, and until conveyance to defendant Swain, owned as her separate property a ranch in Tulare county worth $20,000. The Atlas Iron Works was a corporation with a capital stock of 100,000 shares, of the par value of $10 per share, of which 83,882 shares had been issued. August 1, 1895, plaintiffs contracted with defendant Hovey, who professed to be the agent of defendant Swain, to exchange said farm for 22,220 shares of stock in said corporation. August 5th she conveyed the property to Swain and received the stock.

Plaintiffs were induced to make the exchange by certain fraudulent misrepresentations, which admittedly were quite material and important, and which were all averred and found to be false. It is also averred and found that the defendants were both interested in the exchange, although Hovey represented that he had no interest in the matter and no stock in the corporation, except just enough to authorize him to act as a director. Also, that plaintiffs knew nothing of the facts, save what they were told by Hovey. The representations were made with the intent to defraud and deceive; they were false, and both defend-

ants knew that to be so. It is found that plaintiffs believed the representations, and were induced by them to make the exchange which they would not otherwise have made. The representations were as to facts, and not mere matters of opinion.

Demand for a rescission and the necessary offer to return stock, et cetera, before the action was commenced, were all admitted.

But, while finding all other facts for plaintiffs, the court also found that there was no relation of trust or confidence between the parties, and plaintiffs were not fraudulently induced to forbear inquiry into the truth of the said representations, and "they might have ascertained their falsity by making the necessary investigations and employing the proper means to that end." And, so finding, rendered judgment for the defendants, and adds: "As conclusion of law from the foregoing facts the court finds: 1. That by reason of their neglect and failure to properly examine the property which they took in exchange for their property, and to investigate and ascertain its value, equity will not grant relief to the plaintiffs."

It is argued that this is a misplaced finding of a fact. I think not, though it may be doubted whether it can be called a conclusion of law. It is expressly a conclusion from the foregoing facts, and in its nature is not the statement of an ultimate fact, but the reason for a decision.

The property of the corporation consisted of a foundry on the Potrero, with machine shop attached, with tools and stock, and certain book accounts and bills receivable. The works were in operation. The finding states: "The plaintiffs had no experience in the business there carried on, nor in any similar business, and no knowledge in regard to the value of the said property and assets of the concern nor its shares of stock, and neither of them was skilled in books of account." The false representations as stated in the third finding were the following: "The said Hovey, for the purpose and with the intent to induce the making by the plaintiff of the contract mentioned in the complaint, and the execution of the said deed and transfer therein mentioned, stated and represented to the plaintiffs that the said Atlas Iron Works was perfectly solvent; that the net profits of its business for the year 1894 was $10,000; that there was out-

standing accounts due to it which were good, sufficient to pay all its indebtedness; that it was in better condition than the statement of February 1, 1895 (set forth in the complaint) showed; that its credit was A 1; that it could buy all the material it wanted on credit; that he knew more about its business than anyone else; that he had thoroughly investigated its affairs, and that said stock was worth ninety cents a share; that the open accounts shown in said statement of February 1, 1895, among the assets, were good; that he did not own any of said stock, except enough to qualify him as a director of the company; that said Swain had borrowed thirty-five or forty cents a share on the stock.

The statement of February 1, 1895, was shown to plaintiffs in connection with the representations, and is as follows:

Statement of the Atlas Iron Works.
February 1, 1895.

Assets.

| | | |
|---|---:|---:|
| Construction, Building, Hotel, | | |
| Stock and tools ...................| $68,742 | 22 |
| Cash... ...... ............... ....., | 883 | 92 |
| Merchandise ....... ............ ....... | 5,016 | 00 |
| Open Accounts ..... .... .......... .... | 21,252 | 27 |

Total ................. ................. ...$95,894.41

Liabilities.

| | | |
|---|---:|---:|
| Open Accounts ...... ......... ......| $ 4,169 | 05 |
| Note, J. F. Chapman .................| 1,173 | 89 |
| Anglo California Bank................| 2,412 | 50 |
| Pacific Axle Co., note due January, 1896. | 8,791 | 50 |

Total ...... ...... ...... ....., $16,546.94

Assets over and above liabilities...... ............$79,347.47

As stated, the court specifically finds each representation untrue. As to the statement of February 1, 1895, it was found that the property valued at $68,742.22 was not worth to exceed $25,000, and that more than $8,000 of the open accounts were

worthless, and that the collections from bills receivable will not pay the indebtedness by $4,357.35.

The eleventh finding is as follows: "The stock of the Atlas Iron Works has no market value. It was not bought or sold on the market. It was not worth intrinsically to exceed thirty cents a share. That amount per share might have been derived from a sale of all its property and plant as a going concern, the payment of its debts and the division of the surplus among the outstanding shares, provided a purchaser could be found. If it had been compelled, within any reasonable time, to sell its property and assets for what they would bring in cash, there would have been no surplus for the stockholders. The value of the stock could have been approximately ascertained only by a thorough investigation by experts of the values of its assets and property, and of its books and business."

Before closing the trade Hovey took plaintiffs to the foundry, where they met Swain, who was secretary of the corporation. The defendants then showed plaintiffs through the foundry, and they were "informed in a general way that they could have opportunity to examine the books of the company." At the same time Hovey told them that he "knew all about the affairs of the company and could give them any information that they wanted." Plaintiffs did not examine the books or employ anyone to do so, and did not discover the falsity "of any of the said statements or representations above found to have been made, nor did they gain any knowledge beyond the said representations." All these facts are from the findings, there being no bill of exceptions.

And this is the rule of law asserted by the judgment. Although the vendor and his agent had peculiar means of knowing the material facts, and knew that plaintiffs knew nothing of the property or of the business, or of bookkeeping; and although the value of the property could not have been ascertained without the employment of skilled accountants and expert appraisers; although plaintiffs relied wholly upon the false representation, and had no other knowledge, and no means of knowledge, except by the employing of experts to examine the books and property, and although even by that means the falsity of some quite material misrepresentations could not have been discovered (such as

the value of the open accounts), still, plaintiffs cannot recover, because there was no relation of trust and confidence between the parties, and they were not fraudulently induced to forbear inquiry, "and they might have ascertained their falsity by making the necessary investigations and employing the proper means to that end." The word "necessary" must mean such inquiries as would have proved successful. If the rule were applied to all cases of fraud, relief would always be denied where the relations are not confidential.

It is unnecessary to state that no case has been or can be found which comes anywhere near sustaining this proposition. The only rational explanation of the ruling which I can imagine is, that the court concluded that plaintiffs did investigate for themselves, and did not rely upon the representations, and, since they were not induced to forbear by the fault of the defendants, it was their own fault if their investigations were not sufficiently thorough.

The general rules upon the question as to when a party may or may not rely upon representations are stated in Pomeroy's Equity Jurisprudence, section 892. He cannot rely upon them: 1. When he investigates for himself; 2. When he is afforded the means of investigation and commences to make inquiries which, if efficiently prosecuted, would have resulted in proving the falsity of the representations; 3. When the representation is in regard to generalities, equally within the knowledge of the parties, or the knowledge is equally within the reach of both parties. "But when the representation is concerning facts of which the party making it has, or is supposed to have, knowledge, and the other party has no such advantage, and the circumstances are not those described in the first or second case, then it will be presumed that he relied on the statements; he is justified in doing so." This case is plainly within this last proposition, unless the plaintiffs, instead of relying upon the representations, did investigate for themselves. The parties were not on an equal footing as to knowledge. Defendants, as they represented, knew more about the matter than anybody else—the plaintiffs were entirely ignorant in regard to such property. The corporate stock, which was the subject of the trade, had no market value, but the false representations gave it an intrinsic

value.   This is not a case of patent defects or where the property is at hand, and it would argue gross negligence on the part of the buyer to rely upon statements of the seller without opening his eyes to look.   Under such circumstances there is no case which holds that the purchaser is bound to investigate for himself, and may not rely upon the representations, and that equity will not grant relief to him if he does and is defrauded.

The reason given by the court for its conclusion that defendants were entitled to judgment was as stated, but it found facts as follows: "The plaintiffs were deceived and misled by said false statements and representations, and were ignorant of their falsity, but believed them to be true, and they both acted and relied solely upon them as true, in making said contract and executing and delivering said deed and transfer, and were induced thereby to make said contract and execute said deed and transfer, and, but for said false statements and representations, would not have entered into said contract or made said deed and transfer.

"The plaintiffs did not discover or know the falsity of said representations and statements, nor any of them, until more than two weeks after they had executed and delivered the said deed and transfer."

And further: "By reason of said statements and representations, and their reliance thereon, the plaintiffs have suffered damages in the loss of the real and personal property described in the complaint, and to the value and amount thereof."

The plaintiffs were not put upon inquiry by having their suspicions so aroused that it was negligence on their part not to inquire further, and it also appears that they did not in fact rely upon any examination made by themselves—if it can be held that they made any.

It is quite obvious that the plaintiffs in this case did not make an examination for themselves, or attempt to do so.   · Defendants knew that they were utterly incapable of so doing, except, as the court finds, by the employment of experts.   Showing these inexperienced rustics through the foundry and machine shop was but in furtherance of the fraud, and when they were told "in a general way" that they could examine the books, Hovey also · told them that he knew all about it and could give them all the

information they desired. To lead a blind man through the works would not have afforded an opportunity to examine for himself. These could learn no more except that there was in fact a foundry.

I do not subscribe to the idea that under all circumstances an actual examination by the buyer will shield the wrongdoer from an action for damages.

Every case must be judged for itself, and the circumstances which warrant or forbid relief cannot be scheduled. If the seller knows the facts, and the buyer is ignorant, and to the knowledge of the seller the buyer relies upon the representations, I see no reason why relief should not be granted, although an imperfect examination was made. It may have been imperfect because of the representations. Means were used to prevent the examination, and it would not be going far to say that the relation is made confidential by the mere making of the representation with the knowledge that it will be acted upon. (Civ. Code, sec. 2219.)

"It is now settled law that one who chooses to make positive assertions without warrant will not excuse himself by saying that the other party need not have relied upon them. He must show that his representations were not in fact relied upon. In the same spirit it is now understood that the defense of contributory negligence does not mean that the plaintiff is to be punished for his want of caution, but that an act or default of his own, and not the negligence of the defendant, was the approximate cause of his damage." (Webb's Pollack on Torts, 378, and see note where numerous authorities are cited.)

In Bishop on Noncontract Law, sec. 330, it is said: That plaintiff is too credulous is not generally a defense. "The test of the representation is its actual effect on the particular mind, whether it is a strong and circumspect mind, or one weak and too relying." (See, also, Bigelow on Frauds, 524.)

"Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliber-

ately pledged his faith." (*Mead v. Bunn,* 32 N. Y. 275.) To the same effect are *Eaton v. Winnie,* 20 Mich. 156, 4 Am. Rep. 377; *McBean v. Craddock,* 28 Mo. App. 380, and numerous cases there cited.

The effrontery of the defendants and their unbounded confidence in the guileless simplicity of the plaintiffs is shown by the fact that they told Mrs. Dow that she could verify the statement of February 1, 1895, which is set out above, by inquiring at the mercantile agencies. She did so inquire, and found only that the same statement had been submitted there by the Atlas Iron Works, of which Swain was secretary. This sufficiently shows the incapacity of plaintiffs, but hardly proves that they examined for themselves and did not rely upon the representations.

I have examined the numerous authorities cited by counsel for respondent, and do not think there is one which would help his case. He assumes, however, that his case is one in which the purchasers did not rely upon the representations, but made an examination for themselves. I cannot agree with that proposition.

The findings seem to cover the whole case, and every issue of fact is resolved in favor of plaintiffs. I see no reason for a new trial. The findings as they are entitle the plaintiffs to the relief demanded.

The cause is therefore remanded, with directions to set aside the judgment, and in lieu thereof to enter judgment for the plaintiffs, as demanded in the complaint.

McFarland, J., and Henshaw, J., concurred.