[Civ. No. 10873.   Second Appellate District, Division One.—December 10, 1936.]

MARGARET CARPENTER et al., Respondents, v. A. J. HAMILTON, Appellant.

Meserve, Mumper, Hughes & Robertson and Roy L. Herndon for Appellant.

Lee A. Dayton for Respondents.

SHINN, J., *pro tem.*—Plaintiffs sued to recover damages for alleged fraud by which they were induced to purchase certain real property. Defendant moved for a directed verdict, which was denied. A verdict was returned in plaintiffs' favor in the sum of $2,500. Defendant made a motion for judgment notwithstanding the verdict, which also was denied. Defendant's motion for a new trial was granted upon the grounds, among others, that the damages were excessive and that the evidence was insufficient to justify the verdict. Defendant appeals from the judgment and from the order denying his motion for judgment notwithstanding the verdict. Our attention will first be given to the appeal from the order.

Plaintiffs testified to the following principal representations, which they claim to have believed and relied upon in making purchase of a residence located in the city of Los Angeles: that the house and garage buildings were in good condition and were not in need of paint or repair work of any kind; that the walls were in good condition; that the floors were absolutely level; that the house had a new roof of redwood shingles, and that the garage also had a new roof. Other statements made were mere expressions of opinion and need not be enumerated. The evidence disclosed that the floors were not level; that the foundation on three sides of the house had sunk, causing a sinking of portions of the floors in the dining room, breakfast room, play room, maid's room and garage, as well as numerous cracks in the plaster on the walls. The roof of the house was not new but had been patched with tin shingles, and the garage roof was not new. There were other defects which it is unnecessary to particularize.

The principal contention of the defendant upon this appeal is that the evidence conclusively shows that plaintiffs did not rely upon and were not induced to make the purchase by the representations; that they not only had ample opportunity to inspect the property but that they did so inspect it not only once but several times; and that the purchase was

made in reliance upon what they saw or could have seen and in the free exercise of their judgment.

█ Plaintiffs had a right to rely upon the representations made to them concerning matters of fact which were unknown to them, without making any inquiry concerning the truth thereof, and had they done so defendant could not evade the consequences of any false and fraudulent statements he may have made by showing that means of knowledge of the truth were easily available to plaintiffs. (*Bank of Woodland* v. *Hiatt,* 58 Cal. 234; *Dow* v. *Swain,* 125 Cal. 674 [58 Pac. 271]; *Spreckels* v. *Gorrill,* 152 Cal. 383 [92 Pac. 1011]; *Macdonald* v. *deFremery,* 168 Cal. 189 [142 Pac. 73].)

█ But the right to rely upon the representations, of course, does not exist where a purchaser chooses to inspect the property before purchase, and, in making such inspection, learns the true facts, for the obvious reason that he has not been defrauded unless he has been misled, and he has not been misled where he has acted with actual or imputed knowledge of the true facts. (*Ruhl* v. *Mott,* 120 Cal. 668 [53 Pac. 304]; *Gratz* v. *Schuler,* 25 Cal. App. 117 [142 Pac. 899]; *Oppenheimer* v. *Clunie,* 142 Cal. 313 [75 Pac. 899].)

Upon the question of knowledge it is held, generally, that where one undertakes to investigate the property involved or the truth of the representations concerning it and proceeds with the investigation without hindrance, it will be considered that he went far enough with it to be satisfied with what he learned. Mr. Pomeroy says, in speaking of one who has undertaken to make an inspection of the property, ''The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled.'' (2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 893.) ''One ground of this latter branch of the rule is the practical impossibility in any judicial proceeding of ascertaining exactly how much knowledge the party obtained by his inquiry; and the opportunity which a contrary rule would give to a party of repudiating an agreement or other transaction fairly entered into, with which he had become dissatisfied.'' (Idem.) If it fairly appears from the evidence that the buyer undertook to investigate for himself the matters as to which representa-

tions had been made, he cannot be allowed to later claim that he acted upon the representations, even though he voluntarily abandoned his investigation before it was completed. But it is not to be understood that in all cases he will be precluded from proving that he relied upon the representations, nor does Mr. Pomeroy state that the rule is invariable. A buyer who chooses to make an inspection of the property does not in every case forfeit his right to rely upon the representations. There are exceptions. One exception relied upon by plaintiffs is that a buyer is not required to employ experts to investigate matters of a technical nature as to which the seller has full knowledge and the buyer none, and if for this reason the investigation is incomplete he may show that he relied upon the representations as to matters which he did not investigate. (*Dow* v. *Swain, supra; Stockton* v. *Hind*, 51 Cal. App. 131 [196 Pac. 122] ; *Fay* v. *Mathewson*, 179 Cal. 318 [180 Pac. 939].) This rule is not available to plaintiffs under the facts of the present case where common physical conditions alone were involved which anyone was competent to see and understand. Another exception relied upon by plaintiffs is that a buyer is not chargeable with knowledge of conditions which he fails to discover because of some artifice or deception of the seller. Plaintiffs cannot invoke this rule for the reason that no artifice was used to forestall a complete investigation. Plaintiffs' case falls squarely within the strict rule stated by Mr. Pomeroy. There was no reason or excuse for their failure to make a full investigation and therefore they should be charged with knowledge of all facts which such an investigation would have disclosed. But there is another reason why the charge of fraud must fail. Having inspected the property to be purchased with ample time and opportunity to judge of its condition they must be charged with knowledge of what they learned and what they would have learned in the exercise of ordinary care and diligence. They may not deny knowledge of facts which would have been known to them but for their negligence. It is to be conceded that if they had made no examination of the property defendant could not excuse his fraud by the plea that plaintiffs were negligent in believing what he said and in failing to make an independent investigation, but having undertaken the inquiry, plaintiffs were obliged to look with seeing eyes. When the inspection was over they could not excuse

their ignorance of what they should have seen by pleading the superficial character of their examination.

Situations which call for the measurement of conduct by the standards of ordinary care usually present questions of fact for the jury but a question of law arises when the established facts lead to a single tenable conclusion. The facts as testified to by plaintiffs and their witnesses present a pure question of law. ▮ It may be stated as follows: Does the evidence admit of the single conclusion that plaintiffs did not rely upon the representations? The answer will appear from a statement of the extent of plaintiffs' knowledge concerning the matters alleged to have been misrepresented, for it will be manifest that the defects and disrepair of the dwelling were of such a conspicuous nature that they must have been discovered in the course of a reasonably careful inspection of the premises made by one intending to purchase. In reaching this conclusion we have given to the testimony on behalf of plaintiffs, and the inferences properly to be drawn therefrom, full effect, and have disregarded the evidence in conflict therewith, since this is the rule which applies upon review of an order denying a motion for judgment notwithstanding the verdict. Plaintiffs were taken through the buildings and inspected all but two of the rooms, the chauffeur's quarters in the garage and the maid's room. The failure to see these rooms is not significant; the conditions of which plaintiffs complain were visible in the parts of the buildings which they did examine. They went upon the property for the purpose of satisfying themselves as to its desirability as a home and as to its condition and value. They were in and about the building four times before they purchased and had ample opportunity to make a full investigation. Their inspection progressed to the point where further effort would have been inconvenient, when they voluntarily abandoned it. They contend now that they did so because they relied upon the representations of defendant as to conditions which they failed to investigate and that they purchased upon their faith in what they were told and were influenced not at all by what they saw. They had been told by defendant, as they claimed, that the buildings needed no repairs; that the house "was as sound as a rock and as good as the day he (defendant) bought it". The buildings were eighteen years old, as plaintiffs well knew. They inquired about dry rot and termites

which they knew had appeared in buildings in the vicinity, and not being satisfied with defendant's statement that none had ever appeared, they employed a man to make an inspection. Both dry rot and termites were found underneath the house, whereupon defendant agreed to pay the cost of repairs in the sections affected, if it did not exceed $100. Plaintiffs' position is, in substance, that their inspection of the buildings was casual because of their belief in the truth of defendant's statements. But they had no right to make a mere casual inspection in the light of their knowledge as to the age of the buildings and the decay which they had discovered. They were required to exercise such care and diligence as the circumstances of the case demanded. Having discovered that portions of the building had been attacked by dry rot and termites they were put on notice that the buildings were not sound and in good repair. But even then they made no real effort to find out the condition of other parts of the buildings. In the exercise of the slightest diligence they would have learned that termites had attacked the woodwork in the attic, a fact which became known to them after they entered into possession. Plaintiffs made no effort to acquaint themselves with the general conditions of the buildings except by a mere cursory inspection, although many defects would have been readily discovered by the use of slight diligence. It is an admitted fact, and one established by actual measurement, that the floors in several of the rooms had sunk in a number of places as much as $3\frac{1}{2}$ inches. Plaintiffs went through these rooms but did not discover the condition of the floors. They say they were deceived as to the sloping floors because there were rugs on the floors—an explanation which is not all persuasive since it was not attempted to be shown that the rugs gave the floor a level appearance. It would be idle to contend that this most extraordinary condition of the floors did not constitute a patent defect. Window frames which had been forced out of shape by the settling of the walls had been squared up by the insertion of triangular strips of wood. These repairs plaintiffs claim to have overlooked because of drapes which were hung at the windows. Stains upon the walls were not seen, according to plaintiffs' testimony, which was of a most general nature, because articles of furniture obscured them. Numerous large cracks in the plaster were not seen because, as plain-

tiffs explain, they had been mended. Plaintiffs inquired about a section of plastering which had been repaired and were informed by defendant that the plaster had fallen off during an earthquake. This circumstance should have caused plaintiffs to look carefully for other damage to the plaster but they saw fit not to do so. It is perhaps believable that plaintiffs did not discover these plainly defective conditions but it is altogether unreasonable to suppose that if they had made slight use of their powers of observation they could have overlooked them. So much for the things which plaintiffs looked at and failed to see, but which must have been seen in the exercise of ordinary care. There were other conditions such as the sinking of the foundations and the old and patched condition of the roofs which plaintiffs could have discovered easily if they had made the slightest effort. After the discovery of termites and dry rot under the house plaintiffs made no further inspection there nor did they inspect the roofs. They make much of the fact that the roof of the house could not be seen from the ground because of a wall which surrounded the roof. They maintain that they were not required to look at the roof although there were stains on the ceilings and walls which indicated that leaks had occurred. It might have caused plaintiffs some inconvenience to make an examination of the foundation or the roofs, or to employ someone to make the examination for them, but they could not otherwise have learned of the existing conditions. The duty of a purchaser who has undertaken to make an inspection is not limited to doing the things he may find to be convenient. The difficulties which plaintiffs have pointed out, if they could be properly so called, were not such obstacles as would excuse them from making a complete investigation. All of the means of knowledge were at hand. The true condition of the buildings was before them. If they neglected to discover what was in plain sight the law will nevertheless charge them with knowledge of what they should have discovered. They cannot deny knowledge of the patent defects which existed in the parts of the buildings which they did examine. Having knowledge of the falsity of some of the representations they had no right to rely upon others. ▮ The rule is universally recognized in fraud cases that where the buyer is aware of suspicious circumstances or has learned of the falsity of one or more of the representations he is under a legal duty to make a

complete investigation and may not rely upon the statements of the seller. (*Gratz* v. *Schuler, supra;* 12 Cal. Jur., sec. 37, p. 763.) Plaintiffs were not dissuaded from making a complete investigation by any artifice of defendant and they therefore cannot complain of conditions which they would have discovered if they had pursued their investigations to the end.

Plaintiffs' testimony that they relied upon the representations cannot stand against the other evidence from which they must be held to have had knowledge of their falsity. Courts cannot be expected to extricate persons from entanglements into which they have fallen through their own neglect of duty. The rule which applies in the case of actual knowledge of the facts has equal application where the facts would have been ascertained in the performance of a duty to use ordinary care.

For each of the reasons stated the evidence was insufficient to support a recovery based on fraud. It is therefore unnecessary to decide whether plaintiffs' evidence of damage, consisting only of a statement of opinion by a witness called as an expert, was wholly devoid of evidentiary value.

The order denying defendant's motion for judgment notwithstanding the verdict is reversed and the cause is remanded with directions to enter judgment in favor of defendant.

The judgment was vacated when a new trial was granted as to all of the issues and the appeal which was taken from the judgment is therefore dismissed.

Houser, P. J., and Doran, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal was denied by the Supreme Court on February 8, 1937. Curtis, J., and Langdon, J., voted for a hearing.