[Civ. No. 19151.    Second Dist., Div. Two.    July 8, 1953.]

MILDRED E. LEARY, Appellant, v. MORRIS HARRIS
BAKER et al., Respondents.

George M. Pierson for Appellant.

Allan M. Moore for Respondents.

McCOMB, J.—From a judgment in favor of defendant in a trial before the court without a jury in an action to recover the balance due upon a promissory note secured by a chattel mortgage after legal repossession and sale of the mortgaged property, plaintiff appeals.

*Facts*: July, 1950, plaintiff owned a beauty parlor in Beverly Hills known as Fletchers Beauty Salon which she sold to defendants for $5,500. Defendants paid $1,335 in cash and executed a note for $4,000, plus $210 advance rent.

Defendants took over the business on or about August 15, 1950, and closed it on October 1, 1950. Two weeks after closing the business they served upon plaintiff a notice of rescission on the ground of alleged fraud.

Plaintiff instituted the present action to collect the balance due on the note executed by defendants to which defendants filed a cross-complaint seeking cancellation of the note on the ground of fraud and also asking for damages, it being alleged that defendants had entered into the contract to purchase the business in reliance upon the fraudulent representations of plaintiff that (a) the business was a going, profitable and terrific business, and (b) two operators employed in the business would stay and work on the same basis they had worked when they were employed by plaintiff. The trial court gave judgment in favor of defendants for the sum of $2,410.

Question: *Was there substantial evidence to sustain the trial court's findings that defendants entered into the contract to purchase plaintiff's business and gave her a note pursuant to such contract relying upon the representations made by plaintiff that (a) the business was a "going, profitable and terrific business," and (b) that the operators who had been working for plaintiff would stay and work for defendants on the same basis upon which they were then employed?*

*Yes.* Defendants gave direct testimony that plaintiff made representations to them as set forth in the questioned findings, and that such representations were false and known by plain-

tiff to be false.* Defendants further stated they would not have purchased the business and executed the promissory note in question had they not believed such representations were true and relied thereon.

Clearly such evidence sustained the questioned findings of fact, it being for the trier of fact to determine any conflicts in the evidence, which conflicts in the present case the trial judge determined in favor of defendants.

■ The statement that the business was a profitable one was without question a statement of an existing fact. The further statement that the two operators employed in the business would remain and work on the same basis as they had while they were employed by plaintiff is likewise clearly a statement of an existing fact which would continue in the future. These were not mere statements of opinion. The trial court found, supported by substantial evidence, that the foregoing representations had in fact been made.

■ There is no merit in plaintiff's contention that any misrepresentations were waived by defendants because they made an independent investigation of the business. The record is to the contrary, plaintiff having testified that the books of the business had not been made available to defendants when they requested to see them. Plaintiff's testimony was as follows:

"Q. Now, do you recall the defendants asking you to show your books pertaining to the beauty salon, the business? A. Um-hum.

"Q. And isn't it true that you told them that the books were not available because they were in the hands of your accountant and they were not made up? Do you remember saying that? A. That's very true; that's true."

It is true that a statement pertaining to the business and showing a loss was displayed to defendants but at the time it was shown them plaintiff said, "Well, you know I had a

---

*One of the defendants testified as follows:

"Q. Was there anything discussed as to contacting the operators?

"A. Well, we said that we would like to naturally meet them, and we would like to come there and see them during the day. And she thought the best thing is not to see them. She had handled everything with them and she didn't want it known in the trade that the business was being sold; it isn't good for business, she explained.

"Q. And did Mrs. Leary mention anything else in connection with the operators, other than you have testified to here?

"A. *Well the main thing was that they would stay with us and carry on the business, because the business wasn't worth anything without operators.*"

girl, a receptionist in here, and there was an awful lot of fiddling going on, and I wasn't in the business too much. That's why this statement shows at a loss. That's why it wasn't fair to even show you this, *because I am not showing you the proper figures.*"

The record also discloses that plaintiff told defendants the business was operating at a profit, enough for her to draw $125 a week out of it.

█ It is settled that a single material misrepresentation knowingly made with intent to influence another into entering into a contract will, if believed and relied upon by the other, afford a complete ground for rescission. It is not necessary that there be a multitude of misrepresentations. (*Davis* v. *Butler*, 154 Cal. 623, 626 [98 P. 1047]; *cf. Miller* v. *Gusta*, 103 Cal.App. 32, 38 [4] [283 P. 946].)

Under the foregoing findings and the evidence in support thereof the rule of law just stated is applicable and the judgment in favor of defendants must be affirmed.

No useful purpose would be served by setting forth additional testimony of which there is ample in the record which would support the questioned findings.

Affirmed.

Fox, J., concurred.

MOORE, P. J.—I dissent. The statements made on July 18, 1950, by Mrs. Leary to induce the purchase of her business as testified by Mrs. Ross are as follows: That her business was a solid, terrific concern; she was drawing $125 per week out of it; she had brought into the business some operators who had brought with them a great following, a great volume of business which had really built up the business; the operators are getting 75 per cent and are using their own supplies; they will stay with you and carry on the business.

If no more had been said and respondents had done nothing but rely upon the representations, their recovery would be the logical conclusion from the findings that such statements had been the sole inducement to make the purchase. But such was not the fact. As appellant completed her sales talk, Mrs. Ross said she and Mr. Baker would like to see some figures on all she had to say; would like to see some books, some figures which appellant promised to get. Thereafter, the latter gave respondents a financial statement of the busi-

ness and the three had a meeting "up in Hollywood Boulevard." Mrs. Leary showed some figures which respondents "felt they didn't pertain to the business that she was trying to sell us at the time. The figures were at a loss and we really didn't even discuss them too much. We told them: 'Well this is not the right thing,' and she said: 'Well, I'll try and get the other figures from the accountant as soon as he has them.'" Thereupon, appellant showed them her financial statement of her business which respondents did not "take too much notice of . . . because it wasn't what she was talking about when she was selling us the business . . . this is at a loss; the business she was selling us was making a profit." She made excuses for the financial statement, saying it did not contain the proper figures. Mrs. Ross took notice of the loss of $3,000 by the business as reflected in the financial statement, showed it to Union Bank when she attempted to borrow money to complete the payments to Mrs. Leary, but the bank refused to make a loan although Mr. Baker was one of its customers. That financial statement was the only document respondents ever had before purchasing the business. Despite the losses there indicated, respondents thought that by reason of Mr. Baker's experience in the line they could make a go of it.

The transaction was not consummated until August 15th. In the meantime, both Mrs. Ross and Mr. Baker—a man experienced in operating such businesses as that of Mrs. Leary —proceeded to make investigations of the enterprise and of appellant's representations. Not only did they learn from her financial statement that her business had been losing money, but they learned also that it had no standing with the bank. The investigations they commenced would have led them into a full knowledge of all facts appertaining to Mrs. Leary's operations. But they abandoned their undertaking in the very heat of battle. They did not rely upon the statements of Mrs. Leary. It was 27 days from the first interview until the purchase was completed during which they either completed their investigations or abandoned them on their own motion. Therefore, they did not rely upon appellant's statements.

Under such circumstances one who claims to have been deceived by his adversary "cannot be allowed to later claim that he acted upon the representations, even though he voluntarily abandoned his investigation before it was completed." (*Hefferan* v. *Freebairn*, 34 Cal.2d 715, 720 [214 P.2d 386].)

The facts for which respondents searched were not of a technical nature. Whether the business was a moneymaker could have been ascertained by a glimpse of her cashbook showing receipts and disbursements. While the financial statement showed losses and no gains, one demand upon appellant would have brought forth the complete record of the operations or an admission that she had kept no books showing the amount of profits she had earned.

Likewise, it is true that after Mrs. Leary told them she had imported some operators who would stay and help them run the business, they asked her to allow them to interview the operators; they "would like to come there and see them during the day." When she gave them the tame excuse that "the best thing is not to see them," respondents cheerfully gave up their quest to interview the employees.

It is a rule of wide renown that a party may not complain of misrepresentations regarding matters (1) which he has investigated or (2) when he is afforded the means of investigation and commences to make inquiries which, if efficiently prosecuted, would have resulted in proving the falsity of the representations; or (3) when the representation is in regard to generalities, equally within the knowledge of the parties, or (4) when the knowledge is equally within the reach of both parties." (*Dow* v. *Swain*, 125 Cal. 674, 681 [58 P. 271].) Under the first and second rules, respondents are not entitled to prevail and the authority cited is still the law of California. In the broad field of industry, trade and commerce, men must have some freedom of action. When a vendor deals at arm's length with his prospective vendee and the latter does not rely upon the vendor's representations with respect to a commodity offered for sale or exchange, but investigates to his satisfaction, he has thereby anticipated and arbitrated his own grievances and the courts are powerless to afford him a remedy.

The judgment should be reversed.

A petition for a rehearing was denied July 24, 1953. Moore, P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied September 4, 1953.