[Civ. No. 11734. First Dist., Div. One. Apr. 30, 1942.]

BENJAMIN BOAS et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association) et al., Respondents.

Norman A. Eisner for Appellants.

Louis Ferrari, G. D. Schilling and D. Bianco for Respondents.

KNIGHT, J.—The appellants, Benjamin Boas and Larie K. Boas, husband and wife, appeal from a judgment entered in an action brought by them against respondents for the purpose of securing a judicial determination of the rights of the parties under a written agreement; in particular to have it decreed that appellants' rights thereunder had been illegally terminated by respondents; also to restrain the sale of pledged corporate securities.

Respondents pleaded three separate defenses, each of which

was sustained by the trial court. Its conclusions of law were that said agreement was void because its execution by respondents had been procured by false representations; that it was void because it was unsupported by any consideration; and that it had been breached by appellants and terminated by respondents. The main points urged for reversal constitute an attack on the trial court's legal conclusions, its findings of fact, and the sufficiency of the evidence to support said findings. Appellants urge also that even though the agreement was breached by them and terminated by respondents they were entitled to relief under section 3275 of the Civil Code. We are of the opinion that no ground for reversal has been established.

The respondent H. H. Bechtel is the assignee and agent of the respondent bank. As such, and on May 25, 1936, he obtained a judgment against appellants in the sum of $6,871.76 based on a deficiency due after sale of real property under power of sale conferred by a deed of trust; and shortly after the foreclosure sale negotiations were initiated for a settlement of the judgment debt. The negotiations were conducted by Boas in behalf of himself and wife, and on the part of the bank by W. J. Kirkpatrick, an assistant cashier thereof, whose place of employment was at its main office, No. 1 Powell Street, San Francisco; and on August 12, 1936, the parties entered into the agreement in question which they denominated "Stipulation for Compromise Settlement of Judgment." It provided that if appellants paid to respondents $2,500 in the manner and at the times specified therein respondents would deliver to appellants a full satisfaction of said judgment; that appellants would pay the $2,500 as follows: $100 cash at the time of the execution of said agreement, $25 a month for three years, commencing October 1, 1936, with 3 per cent interest on deferred payments, and the balance of $1,500 at the end of the three-year period; that if appellants defaulted for 30 days in making any of the payments or the interest respondents were entitled to terminate the agreement, in which event the payments theretofore made would be applied in reduction of the judgment debt; that meanwhile the execution of the judgment would be stayed; and that time was of the essence of the agreement. The judgment for the deficiency was entered against Boas and his wife (the latter being sued therein as Sadie K. Boas, a name sometimes used by her); and both were made parties to the agreement of August 12, 1936, but it was

signed only by Boas. On March 1, 1939, appellants were in arrears in the monthly payments to the extent of $300, and on March 25, 1939, the bank mailed them a letter stating that the agreement had been terminated for failure to comply with its terms and that further consideration would be given to a compromise of the judgment debt only upon receiving a financial statement executed by both judgment debtors. On April 19, 1939, a statement was furnished as to the financial condition of Mrs. Boas, and its contents led to the discovery by Kirkpatrick that at the time the agreement of August 12, 1936, was entered into Mrs. Boas was the owner, free and clear of all encumbrances, of 100 shares of the capital stock of E. I. du Pont de Nemours & Company of the value of $16,400. At the same time he discovered also that approximately 7 months subsequent to the execution of said agreement and on March 4, 1937, Mrs. Boas (her husband being present) obtained a loan of $10,000 from the California-Montgomery branch of the respondent bank, and pursuant to a written agreement had pledged said stock as security for the payment of said loan and for the payment of any other indebtedness, past, present or future, due the bank. Upon making these discoveries the bank refused to give further consideration to the reinstatement of the compromise agreement. The refusal was based upon the ground that during said negotiations and at the time of the execution of said agreement Boas had represented that Mrs. Boas "had nothing"—that she "was not possessed of assets"; and that if the bank had known the truth it would not have entered into said agreement. Thereafter and on May 9, 1939, the bank notified appellants that under the terms of the pledge agreement it was holding said stock as security for the payment of the $10,000 loan and the judgment debt. Soon thereafter appellants brought this suit.

With respect to the making of the false representations the trial court found, and its findings are supported by Kirkpatrick's testimony, that during the negotiations preliminary to the execution of the agreement and at the time it was executed Boas in response to questions propounded to him as to whether Mrs. Boas had any assets, stated and represented that she had nothing—that she was not possessed of any assets; and that when Boas returned the instrument to the bank for execution by the bank he was asked why his wife had not signed it, and in response thereto he stated and represented that she was ill and that he did not like to bother her with the matter, that she "did not have anything anyway." The trial court

further found upon evidence legally sufficient to sustain its findings that said representations were false; that respondents believed and relied upon said representations; that they were deceived thereby and would not have entered into said agreement had they known the truth. The representations as to Mrs. Boas' financial condition were shown to be false by the admitted fact of the ownership of said stock; and Boas admitted, as a witness, that at the time he returned the instrument to the bank his wife was not ill—that she was out of town; and the two latter findings are supported by the testimony of Kirkpatrick. Furthermore, the trial court found that it was not until the delivery of the financial statement on April 19, 1939, that the falsity of the representations was discovered, and that thereupon respondents promptly rescinded. As a witness, Boas admitted that at no time prior to nor at the time of the execution of the agreement was any disclosure ever made to the bank by him or his wife of the ownership of said stock. His explanation for the failure so to do was that he was never asked about it. He denied having made the representations attributed to him; but on appeal the evidence must, of course, under well settled rules, be viewed in its aspect most favorable to the prevailing party and all conflicts resolved in such manner as to sustain the general conclusions found as facts by the trial court.

■ As contended by respondents, in effecting a composition agreement the law demands the utmost good faith on the part of the debtor and it will not permit him by pretending to be insolvent to induce his creditor to accept a small portion of the debt in lieu of the whole when in fact his property is amply able to pay the creditor in full; that good faith requires of the debtor, before he shall be permitted to profit by a composition agreement, to make a full and fair disclosure of his effects, and that no concealment, deception or fraud should be practiced. (*Hefter* v. *Cahn,* 73 Ill. 296; *Dolsen* v. *Arnold,* 10 How. Pr. [N. Y.] 528; *Stafford* v. *Bacon,* 1 Hill [N. Y.] 532 [37 Am. Dec. 366].) ■ Furthermore, where in a suit for specific performance it appears that the plaintiff's conduct in obtaining the agreement or acting under it has been unconscientious, inequitable or characterized by bad faith, the court of equity will refuse him relief (Pomeroy's Equity Jurisprudence, 4th ed., § 400) ; and in dealing with the question of false representations it is held generally that even though one may be under no duty to speak as to a matter, if he undertakes to do

so, either voluntarily or in response to inquiry, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure. (*Pohl* v. *Mills*, 218 Cal. 641 [24 P. (2d) 476] ; *Sullivan* v. *Helbing*, 66 Cal. App. 478 [226 Pac. 803].) Under the legal principles stated, the trial court was justified in holding that the factual situation presented was not such as entitled appellants to judicial interference in their behalf.

They contend, however, that since there is no specific finding that appellants made said representations with intent to deceive, one of the elements of fraud is lacking, and therefore that the judgment declaring the agreement null and void cannot be sustained on the ground of fraud. There is no merit in the contention. Where one makes false representations knowing them to be false, the law supplies the fraudulent intent (*Benner* v. *Hooper*, 112 Cal. App. 53 [296 Pac. 660], citing 12 Cal. Jur. 826), and he will not be protected from his fraudulent conduct by the fact that he did not intend to deceive the other party. Having actually deceived such other party and profited by the deceit, the law will not permit him to say that he acted without intent to deceive. (*Spreckels* v. *Gorrill*, 152 Cal. 383 [92 Pac. 1011] ; *Pohl* v. *Mills, supra.*) On appeal a reviewing court is entitled to draw necessary inferences from the trial court's express findings in order to support a judgment (*Hulen* v. *Stuart*, 191 Cal. 562 [217 Pac. 750] ; *Lomita Land & Water Co.* v. *Robinson*, 154 Cal. 36 [97 Pac. 10, 18 L. R. A. (N. S.) 1106] ; *Hamilton* v. *French*, 78 Cal. App. 289 [248 Pac. 281] ) ; that is to say, where from the facts found and the judgment ordered it is evident in the light of the entire record that if more complete findings had been made they would have been adverse to the contention of the appellant, it will be deemed that such inferences were drawn by the trial court, and in those circumstances the failure so to find is not a ground for the reversal of the judgment. (*Hulen* v. *Stuart, supra; Krasky* v. *Wollpert*, 134 Cal. 338 [66 Pac. 309] ; *Benner* v. *Hooper, supra.*) Here fraud was charged; one of the legal grounds upon which the trial court founded its judgment that the agreement was void was that it was obtained by false pretenses; and the evidence shows and the trial court expressly found that the false representations were at all times known by the plaintiff to be false. It follows necessarily that if the trial court had made a finding covering the element of intent to deceive the finding would have been adverse to

appellants. Therefore, the absence of a specific finding to that effect does not serve as ground for reversal.

In support of their contention appellants cite *Hoffman* v. *Kirby,* 136 Cal. 26 [68 Pac. 321], and *Estate of Benton,* 131 Cal. 472 [63 Pac. 775]; but unlike the present case, there was lacking in each of those cases the basic finding that the party making the false representations knew they were false; hence there was no express finding from which it could be inferred that the representations were made with a fraudulent intent. In their brief appellants assert that at the time of the settlement of the findings the trial judge refused to find that the false representations were made with intent to deceive. But in the absence of anything in the record so showing, it cannot be so held on appeal. The issue of fraud constituted one of the principal issues the trial court was called upon to decide, and a great deal of evidence was introduced on that issue. It must be assumed, therefore, that if the trial court did not believe that appellants made the false representations with intent to deceive it would have so found. ■ As said in *Phillips* v. *Hooper,* 43 Cal. App. (2d) 467 [111 P. (2d) 22], the findings of fact must be taken as embodying the conclusions of the trial court on all questions of fact submitted to it for decision; and no antecedent expressions of the trial judge can in any way restrict his power to declare his final conclusion in the only manner authorized by law, that is, by filing his decision containing his findings of fact and conclusions of law as provided in sections 632 and 633 of the Code of Civil Procedure (citing several cases).

■ In any event, this being a case where a trial by jury was not a matter of right, this court under the provisions of section 956a of the Code of Civil Procedure may make the additional finding providing there is evidence to support it, and in our opinion there is. Therefore, pursuant to the authority granted by said code section this court finds that said false representations, having been made with knowledge that they were false, were made with intent to deceive.

Nor does the record sustain appellants' attack upon finding No. XII. While there was no direct testimony that the bank would not have entered into the agreement if it had not believed and relied upon the false representations, it is entirely clear from all the evidence and from the facts found that it would not have done so. Among other things it appears therefrom that at the time the agreement was made

Boas was insolvent; and it is wholly unreasonable to suppose that if Kirkpatrick had then known, as he afterwards discovered, that Mrs. Boas was the owner of corporate securities of the clear value of $16,400, he would have agreed in behalf of the bank to accept $2,500 in monthly installments extending over a period of three years with interest at 3 per cent in full satisfaction of a valid final judgment against Mrs. Boas for $6,871.76, bearing interest at the legal rate of 7 per cent.

Appellants contend also that the defense of fraud was barred by laches. The contention is based upon the premise that the corporate stock was pledged with the California-Montgomery branch of the bank on March 4, 1937; that at that time Mrs. Boas signed a promissory note for $10,000 which was thereafter renewed every 90 days, and that respondents did not rescind until April 19, 1939. The evidence shows, however, that all of the transactions relating to the obtaining of the judgment for the deficiency and to the execution of the agreement were conducted through and that the periodic payments made thereon were paid at the main offices of the bank at No. 1 Powell Street, where Kirkpatrick was employed; that Mrs. Boas was known to Kirkpatrick as Sadie K. Boas; that the deficiency judgment was obtained and entered against her in that name; that such was the name used in the negotiations leading up to the execution of said agreement and that she was named therein as such; whereas she carried on the transactions with the California-Montgomery branch of the bank under the name Larie K. Boas. The pledged certificate of stock was issued to her in that name, and such was the name used by her in signing the promissory notes and the pledge agreement; and it was not until April 19, 1939, that the bank officials at the main offices discovered that Sadie K. Boas with whom they were dealing and Larie K. Boas with whom the branch bank was dealing were one and the same person. Thereupon the bank promptly rescinded. In view of the above facts there could be no justification for holding as a matter of law, contrary to the implied finding of the trial court, that respondents were guilty of laches.

Summarized, the points made by appellants relating to the matter of consideration are that the finding thereon is but a conclusion of law and must be disregarded; that irrespective of the absence of a specific finding the conclusion reached by the trial court on that issue cannot be upheld for the following reasons: (1) that having accepted periodic

payments on said agreement for approximately two and a half years, respondents were estopped from asserting the defense of want of consideration; (2) that since the agreement was in writing it is presumptive of a consideration (citing § 1614, Civ. Code); (3) that the settlement was made with an insolvent debtor and therefore required no consideration; (4) that the settlement was based on a judgment of disputed validity and finality; (5) that there was a "surrender by the debtors of the legal right to pay the judgment except in the manner set forth in the agreement," which constituted a valid consideration. There is no merit in any of the foregoing points. The last three relate to evidentiary matters and find no support in the record. The answer to the third point is that Mrs. Boas was not an insolvent debtor, for admittedly at the time the agreement was negotiated and signed she was the owner of securities of the clear market value of over $16,000. As to the fourth point, appellants concede that they did not contest the action resulting in the entry of the judgment for the deficiency; that it was entered on May 25, 1936, more than two and a half months prior to the execution of the agreement and that no appeal was taken therefrom. ▉ Regarding the fifth point, there could have been no "surrender" of any of appellants' "rights" under the judgment because it is a plain judgment against them calling for the payment of money, and contained no conditions or qualifications; and by the very terms of the agreement the judgment remained in full force and effect during the life of the agreement and until appellants had fully complied with the provisions thereof. ▉ The disputable presumption set forth in section 1614 of the Civil Code was here controverted; upon discovering that the agreement was procured by false representations, respondents were not estopped from asserting that it was unsupported by a valid consideration; and since respondents must apply the money theretofore paid under said agreement in reduction of the judgment debt, appellants are not in a position to complain. Even construing as a conclusion of law the trial court's finding that the agreement is unsupported by a consideration, clearly such conclusion may be drawn from the contents of the instrument itself and from the other facts found.

The contentions urged by appellants against the soundness of the trial court's conclusion that the agreement was breached by appellants and terminated by respondents are based largely upon evidentiary matters. In this regard they

claim that prior to the exercise by respondents of their option to terminate the agreement appellants tendered the full amount of the delinquencies. Such seems to be the major contention stressed in appellants' brief. It is unnecessary, however, to consider or determine the numerous points urged in this behalf for the reason that the ultimate conclusion we have reached on the issue of fraud in any event and independent of the other issues raised disposes of the appeal and demands an affirmance of the trial court's judgment. Even though the points so urged were found to be meritorious, the result would be the same; and if found to be without merit, a discussion thereof and rulings thereon would add nothing of value to the decision. The decision on the issue of fraud disposes also of appellants' claim that they were entitled to relief provided for in section 3275 of the Civil Code.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied May 29, 1942.