[Civ. No. 17790.   Second Dist., Div. One.   Mar. 26, 1951.]

ORTA E. KUHN et al., Respondents, v. FRANCIS C. GOTTFRIED, Appellant.

Desmond & Desmond and Walter Desmond, Jr., for Appellant.

Lloyd S. Nix and Robert F. Tyler for Respondents.

WHITE, P. J.—Plaintiffs herein sought the cancellation of a $5,000 promissory note secured by a chattel mortgage given as payment for the purchase price of defendant's medical practice. Defendant cross-complained for collection of the note, foreclosure of the chattel mortgage and for reimbursement for expenditures allegedly made on plaintiffs' behalf. Because Mrs. Kuhn participated in only a minor way in the transaction, reference hereafter to "plaintiff" or "respondent" should be understood to mean plaintiff and respondent Dr. Orta E. Kuhn. The case was tried before the court without a jury, and all material findings were in favor of plaintiff. Defendant has appealed from the ensuing judgment.

Defendant, a practicing physician in Long Beach, advertised his practice for sale in the American Medical Association Journal. As a result of the advertisement, he entered into a written agreement with a Dr. Jaworski in July, 1948, for the purchase of the practice, good will and equipment for $15,000. After Dr. Jaworski had spent a few days in the office, he abandoned the transaction because he wished to return to Baltimore on account of his father's illness. At that time Dr. Jaworski had paid defendant $2,000 on account of the purchase price. On August 20, 1948, defendant filed suit against Dr. Jaworski in the Superior Court of Los Angeles County to recover the balance allegedly due of $13,000.

Defendant again advertised in the American Medical Association Journal, and on November 18, 1948, plaintiff and defendant had their first conference at defendant's office concerning the proposed sale. On November 23, 1948, a second conference was held. No written agreement was entered into, but a few days later plaintiff commenced practicing in defendant's office, having in the meantime signed a note and chattel mortgage on the furniture and fixtures for $5,000.

The findings of the trial court may be summarized as follows:

That defendant advertised that he would sell a "completely equipped medical office and case records, best remunerative, strictly cash, practice established 18 years; should gross $2,000.00 monthly; will introduce; 3 approved hospitals, certification not necessary, 208 Heartwell Building, Long Beach 2."

That the defendant represented that he had a completely equipped medical office, with complete case records; that the practice should gross the buyer $2,000 monthly; that his practice was chiefly in the field of pelvic disorders; and that the equipment and furniture in his office were worth at least $5,000. That the defendant fraudulently concealed from plaintiff the fact that he was engaged in litigation with Dr. Jaworski over the sale of the practice; that immediately following his execution of the note and chattel mortgage, plaintiff began an investigation of the representations of defendant.

That the medical records of defendant were partial, unreliable, incomplete and inaccurate; that his equipment and furniture were not worth over $500 and were outmoded and obsolete; that defendant was in fact engaged in litigation with Dr. Jaworski arising out of an alleged contract to sell the practice; that the representations and concealments by Dr. Gottfried were false and fraudulent and known by him to be so; and were made with the intent to induce plaintiff to execute the note and mortgage; that plaintiff relied on said representations and concealments.

The court further found that the parties each understood that a written contract would be entered into between them, the plaintiff desiring a provision in such contract that defendant would not engage in practice in the city of Long Beach; but that no such contract was entered into; no consideration

passed to the plaintiff; that there was no "meeting of the minds or mutual understanding" between the parties as to the terms of the proposed contract.

Appellant attacks the findings as being unsupported by the evidence, and further assigns as prejudicial error the court's admission of evidence concerning the litigation with Dr. Jaworski. It is contended that appellant was under no duty to disclose the fact of the litigation, because "in the absence of confidential relations mere silence without fraudulent acts or omissions would not be unconscionable." (*Heydenfeldt* v. *Osmont*, 178 Cal. 768, 773 [175 P. 1].) Counsel for appellant have made an earnest and able attempt to show by analysis of the testimony that the findings are not supported by the evidence. The record, however, discloses the familiar situation of conflicts in the testimony of the parties and their witnesses, which conflicts were resolved by the trier of fact in favor of respondent. ■ "No rule of appellate practice is more firmly settled than that the weight of the evidence is for the jury or the court passing on the facts, and that, as a general rule, an appellate court does not pass upon the weight or preponderance of evidence." (2 Cal. Jur. 936.) ■ The credibility of the witnesses is a problem peculiarly within the province of the trial court (*Peri* v. *Los Angeles Junction Ry.*, 22 Cal.2d 111 [137 P.2d 441]). If there be any inconsistencies or contradictions in the testimony of a witness, the question of which portion or statement, if any, is to be believed is for the trier of fact. ■ On appeal, that portion or statement which supports the verdict or judgment is to be accepted; not that portion which would defeat or tend to defeat the verdict or judgment. (*Bechtold* v. *Bishop & Co.*, 16 Cal.2d 285 [105 P.2d 984]; *Turner* v. *Whittel*, 2 Cal.App.2d 585, 588 [38 P.2d 835]; *Hansen* v. *Bear Film Co.*, 28 Cal.2d 154 [168 P.2d 946]; *Winning* v. *Board of Dental Examiners*, 114 Cal.App. 658, 667, 670 [300 P. 866].) ■ The function of the appellate tribunal begins and ends with a determination of whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings of the trier of fact. ■ Further, in the type of case with which we are here concerned, if there be substantial evidence to support the findings with respect to any one material representation or concealment, or the finding that there was never any "meeting of the minds" upon the terms of a contract, the judgment must be affirmed.

■ With respect to the "meeting of the minds," respondent testified that he at all times wanted a written contract to be approved by the parties' respective attorneys; that he never saw any bill of sale on the office equipment and furniture, nor any inventory; that the parties discussed the extent of space available and the possibility of obtaining more space; that respondent at different times requested appellant that a written agreement be drawn; that appellant refused to execute a contract; that appellant told respondent in December, 1948, that he thought they could get together on some sort of compromise agreement. This testimony was contradicted by appellant, but the issue was resolved against him by the trier of fact. It would seem that the testimony and actions of the parties would well support the conclusion that they never arrived at even an oral understanding on many material matters, such as when appellant would leave and respondent take over the practice; whether appellant would agree not to practice in Long Beach for a period of years; and whether the purchase price was to be $5,000 or $6,500.

■ "When it is part of an understanding between the parties that the terms of a contract are to be reduced to writing and signed by them, assent to its terms must be evidenced in the manner agreed upon else it does not become a binding contract." (6 Cal.Jur., p. 58 et seq.)

■ It was not error to admit evidence of the Jaworski litigation. Respondent testified that he asked appellant about the name of Dr. Jaworski appearing on the door, and appellant told him Dr. Jaworski had purchased the practice, but had given it up to return to Baltimore to take care of his father. Respondent further testified that appellant at no time told him of any litigation involving Dr. Jaworski, and that respondent discovered the fact by chance during the month of December, 1948. Appellant admitted that he had never told respondent of the litigation. At the time appellant was asked concerning Dr. Jaworski, he had on file in the superior court his first amended complaint, in which he alleged that he was "holding the said practice and inventory and equipment for and on behalf of the defendant under the terms of the contract." Thereafter, a second amended complaint was filed upon a different theory, but this, in our opinion, does not affect the merits of respondent's position. The existence of this litigation was clearly a most material fact to a party contemplating purchase of the practice. Ap-

pellant urges that he was under no obligation to advise respondent of the litigation since it in no way affected the sale of the practice to respondent; that by his third amended complaint he simply sought damages, having retaken possession pursuant to the terms of the contract with Jaworski. Further, as heretofore stated, appellant contends he was under no duty to speak. Appellant's contentions may not be upheld. Respondent testified that he would not have considered buying the property had he known of the litigation. Whether the litigation affected appellant's right to sell the practice is not the main question; the basic point is that it materially affected the desirability of the property. ▉ Concealment may constitute actionable fraud where the seller knows of facts which materially affect the desirability of the property which he knows are unknown to the buyer. (*Dyke* v. *Zaiser,* 80 Cal. App.2d 639 [182 P.2d 344]; *Rogers* v. *Warden,* 20 Cal.2d 286 [125 P.2d 7]; *Boas* v. *Bank of America,* 51 Cal.App.2d 592 [125 P.2d 620]; *Macco Construction Co.* v. *Fickert,* 76 Cal. App.2d 295 [172 P.2d 951].) ▉ The cases cited are also authority for the proposition that where one is under no duty to speak, but yet undertakes to do so, either voluntarily or in response to inquiry, he must make a full and fair disclosure and conceal no facts within his knowledge which materially qualify those stated, including any facts which affect the desirability of the property to be sold.

The conclusions arrived at upon the points so far discussed are sufficient to warrant affirmance of the judgment. However, it may be stated that the evidence upon other points, i.e. (1) the representation that the office was completely equipped and worth $5,000; (2) that the practice was a "cash" practice grossing $2,000 per month; (3) that the practice was concerned with "pelvic disorders" (whereas respondent testified it was primarily concerned with treatment of venereal diseases), was all of sufficient substantiality to support the findings of the trial court, irrespective of the asserted weakness of such evidence, or the alleged inconsistencies or contradictions contained therein. Under the well-settled rules heretofore stated, the determination of the issues thus raised was the exclusive province of the trier of fact.

▉ The point is made that respondent did not restore or offer to restore everything of value received by him. Appellant admitted receiving a notice from respondent that he was not going ahead with the practice, and appellant's counsel

stated that the office furniture and equipment were being held by the office building management pending the outcome of the suit. The evidence supports the conclusion that there was nothing more to be restored to the appellant. The contention that appellant was entitled to recover certain expenses must meet the same answer.

For the reasons stated, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.