[Civ. No. 17162.   First Dist., Div. One.   May 20, 1957.]

ANGELA M. DE SPIRITO et al., Respondents, v. DREW ANDREWS et al., Appellants.

William E. Ferriter for Appellants.

Charles Bagby and John F. Foley for Respondents.

WOOD (Fred B.), J.—In this action to rescind a contract for the purchase of a certain business because of alleged fraudulent misrepresentation and concealment of material facts, the court found for the plaintiff-purchasers. The defendant-sellers have appealed. In support of their appeal the defendants urge insufficient evidence to support the findings of fraud, and violation of the parol evidence rule in admitting evidence of fraud.

Defendants owned the "181 Club" in San Francisco at which they served food and alcoholic beverages and conducted

theatrical performances for the entertainment of patrons. They had the appropriate state license for such an establishment but lacked the requisite municipal permit. Their application for the latter was pending, but not acted upon for several reasons: They had not yet supplied the required drawings; the electrical installations did not meet municipal requirements; curtains and hangings had not been certified as flameproof; a sprinkler system had yet to be installed; and the means of egress were inappropriate because the stairs outside the fire door were on property belonging to or under the control of others.

With knowledge of these facts, defendants in June, 1954, visited plaintiffs at a similar establishment the latter were then operating, and discussed the sale of the 181 Club. First, defendant Andrews came and told plaintiff De Spirito he thought that one Carter (a professional entertainer in plaintiffs' employ) would make a success of the 181 Club with his following. Later, the same evening, Andrews returned with defendant Sharkey and repeated that statement, this time to both plaintiffs and Carter. Plaintiffs then agreed to meet the defendants next day at the 181 Club and look it over. They did so the next afternoon and found a stage with tables tiered and the bar so shaped that one could see the stage from any table and from any position along the bar. The defendants also showed them the kitchen, the rest rooms, storerooms, dressing rooms and office and how the lights and fans operated. That night or the next night plaintiffs returned to the 181 Club to see the floor show. They found it in progress and discussed the possibilities for Mr. Carter and how they could stage his show there. They did not inquire of the defendants whether the operations there complied with the law in the sense of having a permit to operate a night club, "because [said plaintiff De Spirito] running a night club myself, I just assumed and took for granted they had all permits and requirements of the law to run an establishment of this sort."

On July 2, 1954, plaintiffs and defendants entered into a buy and sell agreement which described the consideration as "the assumption by the Buyers of all outstanding obligations existing on said business or existing against either or both of the Sellers as a result of the operation of said business, and which said obligations are hereby represented by the Sellers not to exceed the sum of $17,100.00" The sale was conditioned on a composition of creditors. Possession was to be delivered

on the same day, "subject to the State Board of Equalization approving the transfer of the liquor license to Buyers and the landlord consenting to the transfer or assignment of the existing lease on said premises."

On July 18 or 19, 1954, an inspector from the municipal board of health informed plaintiff Clayton she had to have a night club permit.* On July 21, there was a meeting at the board of trade at which plaintiffs learned that the obligations of defendants were in excess of $17,100.

On July 23, when asked about the lack of a night club permit, defendants assured Clayton that the difficulty was due only to the lack of a fire escape and the permit would be issued as soon as that was done. The same day, after this assurance the plaintiffs and defendants entered into a supplemental agreement. This agreement provided that the full purchase price was $17,100 for the premises "free and clear of all liens and encumbrances and including stock in trade, fixtures, equipment, on sale general liquor license, goodwill, signs, and everything else appurtenant to and used in the operation of said business but not including two certain National Cash Registers and a certain ice manufacturing machine . . ." The buyers agreed to enter into a limited partnership to secure the unpaid balance on a promissory note due Lucas G. Politis, Jr. The sum of $4,000 was deposited in escrow and the balance of $13,100 was to be evidenced by a promissory note, payable at the rate of $500 or more per month.

The fire escape was constructed. It was disapproved. The night club permit was not granted. The company that had made an electrical installation threatened to remove the installation if its bill were not paid. Clayton quit adding the bills that were coming in when they totalled $27,000. There was a chattel mortgage on the fixtures to the former owners. Sharkey and Andrews were without means. No composition of creditors was entered into. The plaintiffs did not get a transfer of the liquor license to them. During the first week in September the police stopped the floor show. In the latter part of September, the plaintiffs demanded rescission and a return of the money that was in escrow. Mr. Politis asked them to keep it open a little longer because he had a buyer from Reno. They did so but finally closed during the first

---

*There is evidence that such an establishment as that here described is commonly known as a "night club."

week in November. A written notice of rescission was given to the defendants on November 19, 1954.

### 1. As to Misrepresentation and Concealment.

The fact that defendants were actually operating a night club and represented that plaintiffs' professional entertainer would be a success at the new location, furnished a basis for an inference that the defendants impliedly represented that the premises were fit for legal occupancy and use as a night club.

This meets the test for "actual fraud" prescribed by Civil Code, section 1572 and for "deceit" by section 1710, particularly subdivisions 1 and 3 of each section. It has been applied, for example, in such cases as *Curran* v. *Heslop*, 115 Cal.App. 2d 476 [252 P.2d 378], involving nondisclosure of nonconforming building alterations that had been made without municipal permit; and *Milmoe* v. *Dixon*, 101 Cal.App.2d 257 [225 P.2d 273], and *Unger* v. *Campau*, 142 Cal.App.2d 722 [298 P.2d 891], involving similar concealments.

Then, upon receiving notice of the lack of a night club license plaintiffs inquired of the defendants and were informed that it was due only to the lack of a fire escape and were assured that the landlord was going to build a fire escape and that as soon as that was done the permit would be issued. That was a specific misrepresentation as to the issuance of the permit in such event and concealment of the other reasons for lack of a license.

Defendants suggest that plaintiffs had no right to rely upon such representations and concealments. We see no sufficient basis in the record for any such contention. The mere fact that plaintiffs were themselves night club operators did not impose upon them a duty not to rely upon defendants. That did not of itself require them to make an independent investigation of their own in respect to these matters.

"It is a general rule that a vendor not in a confidential relation to the buyer is not under a duty to make full disclosure concerning the object which he would sell. However, it is a universally recognized exception that if he undertakes to do so he is bound not only to tell the truth but he is equally obligated not to suppress or conceal facts within his knowledge which materially qualify those stated. If he speaks at all he must make a complete and fair disclosure. (*Rogers* v. *Warden*, 20 Cal.2d 286, 289 [125 P.2d 7]; *Macco Construction Co.* v. *Fickert*, 76 Cal.App.2d 295, 299 [172 P.2d 951]; *Dyke* v. *Zaiser*, 80 Cal.App.2d 639, 652 [182 P.2d 344]; *Boas* v.

*Bank of America,* 51 Cal.App.2d 592, 597 [125 P.2d 620].)
■ Certainly respondents were privileged to assume that
appellants had complied with the law in securing building
permits, if any were required, and in conforming with the
building codes. (*Ehlers* v. *Bihn,* 71 Cal.App. 479, 487 [235
P. 673] ; *A. E. Bell Corp.* v. *Bell View Oil Syndicate,* 24 Cal.
App.2d 587, 611-612 [76 P.2d 167].) '' (*Milmoe* v. *Dixon,*
*supra,* 101 Cal.App.2d 257, 260-261. See also *Gillespie* v.
*Ormsby,* 126 Cal.App.2d 513, 527-528 [272 P.2d 949].)

Nor is there any basis for an inference that the failure to
issue the permit was due to any personal disqualification of
the plaintiffs. The ordinance (§§ 460-466, chapter V, San
Francisco Mun. Code), had solely to do with the condition
of the premises ''for the safety of the patrons and employees
and other persons frequenting said establishment.'' (§ 465.)
To that end, it required compliance with applicable regula-
tions administered by such municipal agencies as the Depart-
ment of Electricity, the Bureau of Building Inspection and
the Bureau of Fire Prevention and Public Safety.

Nor were these representations and concealments of the
nature of mere matters of opinion honestly entertained with a
reasonable basis for entertaining them. They pertained to the
physical condition of the premises and the fitness thereof for
a particular use, with knowledge of the elements of unfitness.

We are dealing here with questions of fact. ■ ''The
function of the appellate tribunal begins and ends with a
determination of whether there is any substantial evidence,
contradicted or uncontradicted, which will support the find-
ings of the trier of fact. Further, in the type of case with
which we are here concerned, if there be substantial evidence
to support the findings with respect to any one material rep-
resentation or concealment, . . . the judgment must be
affirmed.'' (*Kuhn* v. *Gottfried,* 103 Cal.App.2d 80, 84 [229
P.2d 137]. See also *Curran* v. *Heslop, supra,* 115 Cal.App.2d
476, 481.)

2. As to the Parol Evidence Rule.

■ Defendants contend that the asserted misrepresentations
and concealments concerning the fitness of the premises for
use as a night club were made during the negotiation stage,
were not included in the contract later written, would vary
the terms of that contract if given credence, and therefore
were not and are not available for any purpose.

Specifically, they say this contract by its very terms was

for the sale of a "restaurant and bar [or tavern]," not a "night club."

The contract did not describe its subject matter so narrowly as that. True, it did not say "night club" but it did in the first paragraph of its recitals refer to defendants and the business in these terms: "Sellers are the owners and operators of a certain restaurant and bar business, commonly known and designated as the '181 Club' and located at 181 Eddy Street, San Francisco, California, and which said premises is licensed by the State Board of Equalization and there is issued to said premises an on sale general liquor license." Here we have a description of a "business" by reference to its name (181 Club) and location (181 Eddy Street), a business which the sellers are operating under that name and at that location. This seems like an invitation to go and take a look at this business in operation, for a more detailed description of it, perhaps indicating an invitation not to limit it narrowly to a "restaurant and bar" business even though the quoted words are used. Significant, also, may be the fact that we are referred to a "certain" restaurant and bar business, a possible additional suggestion that the words "restaurant and bar" were used merely to identify, not to limit or narrowly define, the business conducted under the indicated name at the address specified.

Then, in the body of the contract, sellers agree to sell to the buyers "all of their right, title and interest in and to those certain premises located at No. 181 Eddy Street, San Francisco, California, and which premises are more particularly an on sale general licensed premises, restaurant and tavern and is commonly designated as the '181 Club,' including stock in trade, furniture, fixtures, goodwill, lease, on sale general liquor license and everything else appurtenant to and used in the operation of said business."

Here, again, we seem to find expressed the concept of certain premises and a business conducted thereat. The inclusion of "goodwill" and "everything else appurtenant to and used in the operation of said business," was not narrowly limiting in character. Also, the state on-sale liquor license mentioned was adequate for operation as a night club; no additional state license was needed.

Accordingly, proof of defendants' misrepresentations and concealments concerning the fitness of the premises at 181 Eddy Street for use and occupancy as a night club did not vary the terms of the contract, did not amount to the admis-

sion of "evidence of the terms of the agreement other than the contents of the writing" as those words are used in section 1856 of the Code of Civil Procedure, especially in view of the provisions of that statute which declare: "But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1860, or to explain an extrinsic ambiguity, or to establish illegality or fraud." (See *Chastain* v. *Belmont*, 43 Cal.2d 45, 51-52 [271 P.2d 498]; *Beneficial Fire & Cas. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 524-525 [297 P.2d 428]; *Pacific Indem. Co.* v. *California Electric Works, Ltd.*, 29 Cal.App.2d 260, 271-273 [84 P.2d 313].)

We conclude that the judgment must be affirmed. It becomes unnecessary to consider other points discussed by the parties.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.