[Civ. No. 17589.   First Dist., Div. Two.   Feb. 26, 1959.]

SANFRAN COMPANY (a Corporation), Respondent, v. REES BLOW PIPE MANUFACTURING COMPANY (a Corporation), Appellant.

194

Wallace & Parker, Henderson R. Wallace and Louis F. DiResta for Appellant.

Athearn, Chandler & Hoffman and Theodore P. Lambros for Respondent.

KAUFMAN, P. J.—Plaintiff corporation, Sanfran Company, as the purchaser of real property, filed this action against the vendor, defendant corporation Rees Blow Pipe Manufacturing Company, and the vendor's real estate brokers, Norris, Beggs and Simpson, and their employee, C. N. Gustafson. The complaint set forth two causes of action; the first, for wilful or negligent misrepresentation that the building at 340-7th Street, purchased from the defendant, was a Class "C" building under the Building Code of the City and County of San Francisco, and that the building had side walls; the second for fraudulent concealment of the missing walls and the building code violations. Before trial, respondent dismissed the complaint as to the brokers and their employee.

The case was tried by the court without a jury. The court made findings of fact and concluded that the plaintiff was entitled to take nothing under the first cause of action, but was entitled to judgment in the amount of $20,000 on the second cause of action. This appeal is taken on the grounds that the judgment on the second cause of action is not supported by the findings, as the findings are inconsistent and are not supported by the evidence.

Plaintiff and Baydis Realty are connected with United Parcel Corporation, which is in the parcel delivery business. The property which the plaintiff purchased from the defendant consists of two parcels; the first, at 340-7th Street, is comprised of a T-shaped lot and building, around the corner from the United Parcel property at 1144 Harrison Street in San Francisco; the second, a smaller parcel of 1,600 square feet, fronts on Langton Street and is directly opposite the rear door of the first parcel and contiguous to the rear portion of the United Parcel property. This dispute centers on the first parcel, the building at 340-7th Street. In order to clarify the issues presented, it is necessary to describe first, the details of the construction of defendant's building and the significant provisions of the various building ordinances of the city and county of San Francisco in effect during the construction of defendant's building, and second, the series of events which led to the transaction between the parties.

Under the ordinances, buildings are classified as follows: those with concrete walls are called Class "C" or Type 3, and those with wooden walls are called frame or Type 5 buildings. The building law imposes area limits according to these classifications. A frame or Type 5 building without an automatic fire alarm or sprinkler system is subject to an area limitation of 10,000 to 12,000 square feet. The building law also provides that no wall or part of a wall in any building shall be removed to produce a larger area than permitted. A permit must be obtained for the construction, alteration, repair, moving or demolition of any structure. A building must have side walls.

In 1907, in conformance with a building permit, defendant's predecessor erected a wooden frame corrugated iron covered building for use as a tin shop, on a small lot on the west side of 7th Street. (In 1909, Ordinance 1008, [New Series] known as "The Building Law" was enacted and became effective on January 1, 1910.) In 1911 defendant was organized as a corporation and acquired the above mentioned property, which

then had an area of 2,000 to 4,000 square feet. Between 1911 and 1923, the defendant acquired additional lots adjoining the original one. Defendant made several successive additions, thus extending the original building over the additional lots acquired. Only some of these are of significance in this dispute.

In 1923, defendant made a 50 by 70 foot addition to the south end of the building. Under a 1922 amendment of the 1909 ordinance, frame buildings were limited to an area of 10,000 square feet. (Ordinance 5711 [New Series] effective October 19, 1922, and amending § 80 of Ordinance 1008; in 1939, Ordinance 1.075 enacting the San Francisco Municipal Code became effective.) The building code contained area limitations substantially the same as the prior law. Defendant's application was denied initially, but later granted upon the condition that a divisional wall be erected. The floor area of the building was thus extended to approximately 11,800 square feet, apparently in violation of the provisions of both ordinances.

In 1938, Lloyd Rees, defendant's present secretary took over the active management of defendant's San Francisco operation. In 1939, 1940 or 1941 the division wall required by the 1923 permit was removed under his supervision. Lloyd Rees testified that he did not know why the wall was removed, or that it had been required by the prior permit.

In 1941, section 265 of the Building Code was amended to allow frame buildings to have an area of 50,000 square feet under certain circumstances. (Ordinance 1318, [Series of 1939].) In 1941 defendant acquired a lot on the north side of its property, thus extending the area to its present shape. Defendant made an addition to the north end of the existing building. The plans and specifications showed that no wall was to be erected on the north where the addition would abut the solid concrete wall of the building of the adjacent property owner, nor on the south side where the addition would abut the existing building. The addition was built pursuant to a permit, which was apparently illegal because a frame building must have exterior walls.

Late in 1941, section 265 of the building code, relating to area limitations was amended to allow 12,500 square feet in frame buildings fronting on two streets. This amendment permitted a 50 per cent increase in area if the building is equipped with an automatic fire alarm system and a 100 per cent increase if equipped with automatic sprinklers. (Ordinance 1432 [Se-

ries of 1939], approved Nov. 12, 1941, effective Dec. 12, 1941.) Defendant's building was not equipped with either, and thus subject to the initial area limitation of 10,000 square feet.

In 1942, defendant acquired further property facing on 7th Street and adjacent to the city firehouse. Defendant applied for a building permit for the addition of a storage warehouse. The plans and specifications called for a wall on the southside, adjacent to the wall of the firehouse. This wall was not carried the full height of the building as required by the specifications, but the construction was approved. Defendant admits this violation of the permit. Upon completion of the warehouse addition, the building had an area of 24,825 square feet.

In 1947, the building code was completely revised. (Ordinance 4547 [Series of 1939], effective Sept. 11, 1947, known as "The Building Code of 1947") Section 304 of the Building Code of 1947 made changes in the issuance of permits; Section 304 for the first time provided that " . . . Approval does not constitute approval of any violation of this code or of any other law or ordinance." On September 22, 1947, defendant filed an application for a building permit for the erection of a second floor to the one story concrete wall office building first erected in 1921. The plans and construction were approved even though this addition brought the total area to 26,825 square feet.

In January 1954, defendant authorized the real estate brokerage firm of Norris, Beggs and Simpson to obtain a site for a new factory in Berkeley and exchange or sell the 7th Street and Langton Street properties therefor. Miller and Gustafson of Norris, Beggs and Simpson prepared two circulars listing defendant's property for sale. The first of these dated January 11, 1954 describes the property at 340-7th Street as follows: "One story Class 'C' Building, containing approximately 26,825 square feet." The second states, "Improvements: One Story Class 'C' Concrete and Frame Building. Lot Size: 24,825 Square Feet, Total Building Area—26,825 Square Feet." After finding a suitable site owned by San Francisco Sulphur Company (Stauffer Chemical Co.), defendant gave the broker an exclusive authorization to sell the 7th Street property.

At about the same time, United Parcel wished to expand its main garage and package-sorting facility at 1144 Harrison Street. United Parcel retained Frank P. Gomez as its real estate broker to acquire property for this purpose. As early as January 1954, Mr. Gomez had received the first of the above

mentioned circulars and turned it over to Mr. Morton, the San Francisco Manager of United Parcel. Later, Lloyd Rees, defendant's secretary, prepared a plot plan for distribution to prospective customers. Mr. Morton and Mr. Schlinger (Vice-president in charge of West Coast Operations of United Parcel as well as vice-president of both Baydis Realty and Sanfran Company) used this plot plan. At a meeting in Los Angeles in May, Mr. Gomez, Mr. Gustafson and Mr. Schlinger discussed the acquisition of defendant's properties. At this meeting, the parties had a copy of the second circular and the above mentioned plot plan. At this time United Parcel was not interested in the defendant's properties, as there was some possibility of acquiring other nearby properties with the city's proposed South of Market Redevelopment. Sometime thereafter, it became apparent that United Parcel would not be able to acquire these other properties. Mr. Schlinger indicated to Mr. Gomez that it might therefore be desirable to obtain the only available property of large size in the block, the defendant's.

C. Russell Rees and Lloyd Rees, defendant's officers, who handled the transaction, did not tell any of Norris, Beggs and Simpson's representatives or plaintiff's representatives about the missing walls or building code violations. Lloyd Rees, however, testified he thought he had indirectly indicated that one wall belonged to the adjacent firehouse. Various representatives of both plaintiff and defendant (including Miller, Gustafson, Gomez, Schlinger, Morton and others) made a total of 28 visits to the premises without detecting the missing walls or code violations.

After further negotiations, Baydis Realty agreed to purchase defendant's property for $158,150 by a written contract dated June 11, 1954. This purchase was a part of a three-way transaction, whereby defendants acquired the Berkeley property from San Francisco Sulphur (Stauffer Chemical). The contract was assigned to the plaintiff who assumed the obligations of the agreement and paid the purchase price on June 25, 1954.

Sometime in July, plaintiff's engineer Baker and Hoyt (a civil engineer and contractor employed by plaintiff) looked over the building to discuss the necessary alterations that would have to be made. At this time, they discovered the missing walls.

On September 28, 1954, the plaintiff filed an application with the Department of Public Works of the City and County

of San Francisco to change the use of the building from manufacturing to the proposed use as a commercial garage. Under the applicable ordinances it was necessary to have a Class "C" building for use as a commercial garage, a use classified by the ordinance as one more hazardous than defendant's prior use for light sheet metal manufacturing. In October 1954, this application was disapproved by the Building Inspector on the grounds that the building violated certain provisions of the San Francisco Building Code, relating to area, ventilation, and the type of construction required for buildings used as garages. On April 19, 1955, plaintiff filed this action for its out-of-pocket losses, measured by the difference between the purchase price and the market value at the time of the sale.

The first contention on appeal is that in view of the court's findings of fact and conclusions of law on the first cause of action, the judgment on the second cause of action is not supported by the findings. On the first cause of action, which was for fraudulent misrepresentation, the court found: that the defendant represented to the plaintiff that the building at 340-7th Street was a Class "C" building under the Building Code of the City and County of San Francisco (a building with exterior walls of brick, stone and concrete and an interior frame of combustible material) ; that this representation was a material one, as it affected the use of the building; that "the representation that the building was a Class 'C' building was false because the building had no side walls and the front and back walls were wood rather than brick, stone or concrete; that the representation was also false because the building, due to the absence of side walls, was not a Class 'C' building; that defendant had no reasonable ground for believing the representation to be true; that the defendant made the representation with intent to induce plaintiff's assignor to rely on the representation and to enter into an agreement for purchase and sale." The court further found that "[i]t is not true however that plaintiff's assignor reasonably believed the representation to be true and in reliance thereon entered into said agreement of June 11, 1954; nor is it true that plaintiff in reliance on said particular representation entered into and performed said agreement." The court also found that it is not true that defendant affirmatively represented to plaintiff's assignor by plot plan or otherwise that the building was at 340-7th Street had side walls.

On the second cause of action, the court found: that on

January 11, 1954, and several days later, defendant represented that the building was a Class "C" building; that prior to June 11, 1954, defendant gave plaintiff's assignor a plot plan of the building that "having volunteered to speak" defendant thereby obligated itself to make a full and fair disclosure and to conceal no facts within its knowledge materially qualifying those stated or affecting the desirability of the property; that "defendant did not disclose and concealed that the building had no side walls and that defendant's acts and the building as sold were in violation of the wall, area and permit requirements of 'The Building Law' passed December 22, 1909, as amended from time to time and 'The Building Code' of the City and County of San Francisco passed August 12, 1947, as amended from time to time;" that the "defendant had knowledge of these facts and concealed them with intent to induce plaintiff's assignor to enter into the sales agreement of June 11, 1954; that plaintiff's assignor and plaintiff had no knowledge of these facts and defendant knew and should have known they didn't have knowledge of these facts; that the facts so concealed by defendant were material because they affected the usability, desirability, and value of the property; that as a result of said concealment defendant induced plaintiff's assignor to enter into said agreement and induced plaintiff to perform the obligations of the agreement; that the plaintiff paid the purchase price of $158,150 on June 25, 1954; that the fair market value of said property as of that date was $138,150; . . . that as a result of defendant's fraudulent concealment plaintiff has been damaged in the sum of $20,000." (Findings of Fact and Conclusions of Law.)

Defendant's first major contention on appeal is that the findings and judgment on the second cause of action are inconsistent with the findings on the first cause of action. Specifically, defendant argues that the finding of inducement on the second cause of action is inconsistent with the finding of no reliance on the first cause, and cannot be supported in the absence of a finding on reliance as to the second cause; that defendant had no duty to speak; and that plaintiff's failure to carry out its duty of full inspection precluded a judgment in its favor on the second cause of action. We will examine these arguments in the order stated.

The first question is whether there is any conflict in the findings and whether such conflict is irreconcilable with respect to matters which are material to the merits of the case. We cannot agree with the defendant that in the instant case

there is such a conflict in the findings, that the findings cannot be construed to support the judgment. The two causes of action are based on two different theories. ▮ Where a complaint presents two causes of action, on either of which the plaintiff can recover, and the findings though adverse to one theory are favorable to the other, a judgment in favor of the plaintiff is proper. (*Cass* v. *Ocean Park Bath Co.*, 45 Cal. App. 656 [188 P. 616].) ▮ Where one finding sustained by sufficient evidence will support the judgment, an appellate court will presume the judgment was based on such finding, and questions relative to the other findings become immaterial on appeal. (*Logan* v. *Forster*, 114 Cal.App.2d 587 [250 P.2d 730].)

▮ There is nothing inconsistent about the finding of inducement in the second cause of action and the finding of no reliance in the first cause. Defendant represented the building as a Class "C" concrete and frame building. While the plaintiff knew that the walls were not concrete, plaintiff did not know about the missing and partial side wall or the other building code violations. Defendant's failure to disclose these matters meets the test for deceit under subsection 3 of Civil Code, section 1710. (*De Spirito* v. *Andrews*, 151 Cal.App.2d 126 [311 P.2d 173]; *Unger* v. *Campau*, 142 Cal.App.2d 722 [298 P.2d 891]; *Curran* v. *Heslop*, 115 Cal.App.2d 476 [252 P.2d 378]; *Milmoe* v. *Dixon*, 101 Cal.App.2d 257 [225 P.2d 373].) As pointed out in the De Spirito and Milmoe cases, *supra*, plaintiffs were privileged to assume that the building had walls and complied with the building codes.

The second question is whether a finding of reliance on the first cause of action is essential to the correctness of the findings and judgment on the second cause of action. (See *Estate of Harvey*, 164 Cal.App.2d 330 at 333-334 [330 P.2d 478] cases cited therein.)

Section 1709 of the Civil Code is as follows:

"One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Section 1710, so far as relevant, is as follows:

"A deceit, within the meaning of the last section is either:

"1. The suggestion as a fact, of that which is not true, by one who does not believe it to be true.

. . . . . . . . . . . .

"3. The suppression of a fact, by one who is bound to disclose

*it, or who gives information of other facts which are likely to mislead for want of communication of that fact."*

The first cause of action for misrepresentation is based on subsection 1 of the above section; the second, for concealment, on subsection 3. In misrepresentation cases, causation is frequently presented in terms of "reliance." (Harper & James, The Law of Torts, vol. 1, § 7.13 at p. 583.) In concealment cases, causation is usually spoken of in terms of "inducement." (See Rest., Torts, §§ 525, 551.) In the instant case, the court found that: "It is true that as a result of said concealment, defendant induced plaintiff's assignor to enter into said agreement and induced plaintiff to perform the obligations of said agreement." It follows that the above quoted finding is sufficient for the second cause of action and that no finding of reliance was required.

Defendant next argues that he was under no duty to disclose any facts except as they might materially qualify the representation made. In *De Spirito* v. *Andrews,* 151 Cal.App.2d 126, the court said at page 130 [311 P.2d 173]:

" 'It is a general rule that a vendor not in a confidential relation to the buyer is not under a duty to make full disclosure concerning the object which he would sell. However, it is a universally recognized exception that if he undertakes to do so he is bound not only to tell the truth but he is equally obligated not to suppress or conceal facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a complete and fair disclosure. (*Rogers* v. *Warden,* 20 Cal.2d 286, 289 [125 P.2d 7]; *Macco Construction Co.* v. *Fickert,* 76 Cal.App.2d 295, 299 [172 P.2d 951]; *Dyke* v. *Zaiser,* 80 Cal.App.2d 639, 652 [182 P.2d 344]; *Boas* v. *Bank of America,* 51 Cal.App.2d 592, 597 [125 P.2d 620].)' "

As pointed out in *Kuhn* v. *Gottfried,* 103 Cal.App.2d 80, 81 [229 P.2d 137], any facts which affect the desirability of the property to be sold, are facts "which materially qualify these stated." Defendant admitted that the double lines on the plot plan could be interpreted to mean walls.

Defendant further argues that the absence of side walls and building code violations were patent. This, however, is an issue of fact which was properly resolved by the trial court in favor of the plaintiff. "Where material facts are accessible to the vendor only and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such facts to the vendee." (*Rothstein* v. *Janss Investment Corp.,* 45 Cal.App.

2d 64 [113 P.2d 465]; *Dyke* v. *Zaiser*, 80 Cal.App.2d 639 [182 P.2d 344].) ▓ Under the evidence here presented, the court could conclude that the fact of missing walls and code violations were not within the reach of the diligent attention and observation of the plaintiff.

▓ Defendant next argues that under the rule of *Ruhl* v. *Mott*, 120 Cal. 668 [53 P. 304], after plaintiff learned that the building was not Class "C," plaintiff was required to make a full investigation. The record indicates that plaintiff made numerous visits to the premises. It does not follow, however, that the inspection precludes a judgment in favor of the plaintiff. Whether the investigation made by the plaintiff was a properly full one after his discovery that the building was not Class "C," was an issue of fact for the trial court. Despite the evidence of plaintiff's repeated visits, the court found that the plaintiff had no knowledge of the missing walls and building code violations. It is implicit in the above finding that the side walls and building code violations were hidden defects which could not have been discovered by the plaintiff in his investigations. *Carpenter* v. *Hamilton*, 18 Cal.App.2d 69 [62 P.2d 1397], relied on by the defendant, has been held applicable only to visible defects (*Hefferan* v. *Freebairn*, 34 Cal.2d 715, 720 [214 P.2d 386]) or where the purchaser on inspection learns the true facts. (*Burkett* v. *J. A. Thompson & Son*, 150 Cal.App.2d 523, 525 [310 P.2d 56].) Furthermore, the trial court viewed the premises. This is of itself sufficient evidence to support its implied finding of latent defects. (*Sparling* v. *Housman*, 96 Cal.App.2d 159 [214 P.2d 837].)

▓ Defendant's second major contention on appeal is that certain findings are not supported by the evidence. The first finding so attacked is a part of Finding II that the defendant concealed the fact that the building at 340-7th Street had no side walls. Defendant's vice-president, C. Russell Rees, testified that he knew about the absence of the side walls but did not think to tell anyone about it. Defendant's secretary and plant superintendent, testified that he did not tell plaintiff's engineer that one wall belonged to the firehouse rather than the building. Furthermore, as indicated in the statement of facts at the beginning of this opinion, the removal of the 1923 wall and the violation of the 1941 permit occurred while defendant's officer Rees was secretary of the corporation and plant superintendent. In the light of the above, defendant's argument as to this portion of Finding III is spurious.

▮▮▮ Defendant next argues that the court's findings that the defendant had knowledge that its acts and the building were in violation of the area and permit requirements, are not supported by the evidence. Defendant is not attacking the finding of knowledge of the missing walls, which as indicated above, are amply supported by defendant's admission as well as the evidence. ". . . in the type of case with which we are here concerned, if there be substantial evidence to support the findings with respect to any one material representation or concealment . . . the judgment must be affirmed." (*De Spirito* v. *Andrews,* 151 Cal.App.2d 126 at 131 [311 P.2d 173], quoting *Kuhn* v. *Gottfried,* 103 Cal.App.2d at 84 [229 P.2d 137].) Thus, any error in the finding of knowledge as to the building code requirements would be harmless.

▮▮▮ We will, however, briefly discuss the contentions made on this point by the defendant. Defendant argues that the finding is vitiated by the absence of evidence of affirmative concealment, and plaintiff's admission at the trial that it did not claim that the officers of defendant corporation were guilty of fraud, but only defendant corporation. Thus, argues defendant, as there is no evidence that the defendant's officers knew of these violations, respondeat superior does not apply and the corporation cannot be held liable for concealment.

Defendant's argument is without merit on both points. First, affirmative fraudulent intent is not required. Mere nondisclosure, when combined with statements of facts which are likely to mislead in the absence of such further disclosure, is actionable. (Civ. Code, § 1710, subd. 3; Rest., Torts, § 551, 1957; California Annotations, pp. 63, 64, and cases cited therein.)

Second, the corporate representative, who obtained the 1923 building permit is bound to know the contents of that permit, and this knowledge must be imputed to the corporation. This permit required the construction of a division wall and stated the area limitation of 10,000 square feet. Thus, the corporation had notice and knowledge of these facts and no subsequent change of officers could take away this notice and knowledge. (*Mechanics Bank* v. *Seton,* 1 Pet. (U.S.) 299, 309 [7 L.Ed. 152].)

Furthermore, Civil Code, section 2332, provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

Thus, knowledge by any agent of the corporation, whether presently an officer or not, is the knowledge of the corporation. As the corporation had knowledge of the code violations and the missing walls, *Watt* v. *Patterson,* 125 Cal.App.2d 788 [271 P.2d 200], relied on by the defendant, is not in point. In that case, the vendor had no knowledge of the violation.

Nor is there any merit to defendant's argument that the issuance of invalid permits can erase knowledge of the missing side walls and the violations of the 1923 and 1942 permits.

Defendant's final contention is that the court's findings of materiality of the concealed facts and damages in the sum of $20,000 are not supported by the evidence. ▪ As to materiality, defendant argues that the plaintiff purchased the property because it was the only available plot in the vicinity of its plant at 1144 Harrison Street, of sufficient size for plaintiff's use as a garage for its vehicles, and that plaintiff would have purchased the property regardless of the building law violations and missing walls. The testimony of plaintiff's officer, Schlinger, on this point is: "If I had known then what I know now about the property, I would not have bought the property—for that price at least." Schlinger further testified: "If I had known about the required wall which was removed, it would have raised a question in my mind as to whether it was desirable to purchase the property—or it may have been a point for bargaining." There was also evidence that plaintiff had very little time to complete the transaction, as defendant's option on the Berkeley property expired early in June.

Plaintiff's real estate broker testified that he did not know plaintiff was planning to use the building as a garage; "they may have wanted to use it for sorting parcels." There was evidence that defendants knew of the contemplated garage use.

The evidence supports the trial court's finding of materiality. ▪ Furthermore, concealment is material where the knowledge suppressed is so important and obviously so well in the recollection of the party withholding it, that its mere repression amounts to fraud. (23 Cal.Jur.2d, § 24, p. 61.) ▪ Defendant's argument also overlooks the fact that "It is sufficient if the evidence shows that the finding of fraudulent concealment was an inducement to make the purchase without showing that it was the sole inducement." (*Curran* v. *Heslop,* 115 Cal.App.2d 476 at 481 [252 P.2d 378].)

▪ As to damages, the court found that the plaintiff was damaged in the sum of $20,000. Defendant's argument is that

plaintiff was not damaged at all, since plaintiff is now using the building as a garage. However, as plaintiff repeatedly indicated at the trial, it sought only its out-of-pocket losses, and not damages because the building was not usable as a garage. Under Civil Code, section 3343, the damages sought are measured by the difference between the value received and the purchase price. Plaintiff here paid $158,150. Plaintiff's engineer testified that it would cost a minimum of $27,000 to make the necessary changes. One of plaintiff's experts considered this cost and appraised the property at $125,000. Another testified that aside from the alleged violations of the building laws as a frame building, the property was worth $158,000. Defendant's expert had no opinion as to the value of the building in its illegal state.

The question of damages was one of fact for the trial court. We think under the evidence presented, the trial court reached a proper and fair result on this issue, as well as all the other issues presented by this case.

We conclude that the judgment finds support in the record before us and accordingly, it must be affirmed.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.